RANGELY (SHEPLEY v.). See Case No. 12,756.

RANGER. The (DRYSDALE v.). See Case No. 4,097.

---

## Case No. 11,564.

### RANGER v. NEW ORLEANS.

[2 Woods, 128.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1875.

MUNICIPAL CORPORATION—SPECIAL TAX—RECEIPT OF PAYMENT—IRREGULARLY ISSUED BONDS—FUNDS.

1. A municipal corporation being required by law to levy an annual tax to pay interest on certain designated bonds, and having levied and collected the tax for that purpose, has no right to divert the fund to other purposes, and, upon application by the holders of the bonds, will be enjoined from so doing.

2. Where a tax to pay interest on certain bonds has been levied by a municipal corporation for a series of years, and the interest due from year to year had been paid in full, although a portion of such interest tax for those years was in arrears, an injunction to restrain the corporation from receiving payment of said arrears in city scrip was refused, it being made to appear, that unless scrip were taken, the tax in arrears could not be collected at all.

3. The charter of a municipal corporation imposed conditions and restrictions upon its power to contract debts and issue bonds. Holders of bonds, issued in pursuance of the charter, made no opposition to the issue, at a subsequent date, of bonds contrary to the restrictions of the charter, and the latter bonds found their way into the hands of bona fide holders for value. Held: (a) that such irregularly issued bonds were binding on the municipal corporation; (b) that the holders of bonds regularly issued could not assail their validity.

4. Holders of the bonds, regularly issued, had no right to claim that their bonds should be paid in preference to the irregular bonds, out of moneys not specially collected for that purpose, even though the regular bonds were due and the irregular ones were not.

[This was a bill in equity by Morris Ranger against the city of New Orleans.] Submitted on motion for injunction pendente lite.

H. B. Kelly, D. C. Labatt, and J. Aroni, for the motion.

B. F. Jonas, City Atty., and H. C. Miller, contra.

WOODS, Circuit Judge. The bill states, in substance: That the complainant is the owner and holder of five bonds of $1,000 each, dated May 1, 1854, payable in twenty years after date, issued by the city of New Orleans, by authority of Act No. 109 of the Acts of 1854, authorizing the city of New Orleans to subscribe to the stock of the New Orleans, Jackson & Great Northern Railroad Company, approved March 14, 1854; and also one bond for $1,000, dated September 1, 1854, due in twenty years after date, and issued by the city of New Orleans by authority of Act No. 108 of the Acts of 1854, approved

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

March 15, 1854, authorizing the city to subscribe to the stock of the New Orleans, Opelousas & Great Western Railroad Company. That complainant has brought an action at law against the city on the law side of this court on these and other bonds of the same issue and the coupons attached to them, and has recovered judgments thereon amounting in the aggregate to $6,000, on which executions have been issued and returned nulla bona. That by the thirty-seventh section of an act approved February 23, 1852, "to consolidate the city of New Orleans and provide for the government and administration of its affairs," which act was in force when said acts (Nos. 108 and 109) were passed and said bonds issued, it was provided that no future debt or loan should be contracted by the city unless the same should be authorized by a vote of a majority of the voters of the city, and no ordinance creating a debt or loan should be valid unless for some single work or object distinctly specified therein, and unless such ordinance should provide ways and means for the payment thereof, and such ordinance should not be repealed until the principal and interest of the capital borrowed should be fully paid and discharged.

The bill further alleges: That by the above named acts (Nos. 108 and 109), under which the bonds held by complainant were issued, it was provided that the subscription to the stock of said railroad companies should be payable in the bonds of the city, having twenty years to run; that a special tax on real estate and slaves should be levied in January of each year, sufficient to pay the annual interest on said bonds, to be collected in the same manner as the consolidated loan tax of the city, and that all ordinances, resolutions or other acts passed after the first day of January in each year, except an ordinance for the consolidated loan tax, should be null and void, unless a resolution imposing a special tax for the payment of the interest on the said two series of bonds should be first passed. Acts 1854, pp. 69, 70. That the same provisions were made by Act. No. 110 of the Acts of 1854, for a tax to pay the interest on bonds issued for stock in the Pontchartrain Railroad Company, subscribed by the city of New Orleans. That the bonds issued by the city to purchase the waterworks, having been issued in conformity to the provisions of an act passed in 1834, were not required to be issued in the manner prescribed by the consolidation act of 1852. That these four classes of bonds, to wit, those issued to take up the consolidated debt of the city, those issued to pay for stock in the New Orleans, Jackson & Great Northern Railroad Company, those issued to pay for stock in the Pontchartrain Railroad Company, and the waterworks bonds, are the only bonds issued by the city which were not issued in violation of the aforesaid act of February 23, 1852; that the provisions of

said act formed a part of the contract between the city and the holders of said bonds; that all bonds subsequently issued, having been put forth in violation of the said act of consolidation, are, as regards the complainant and those holding similar bonds, null and void, and of no effect in law.

The bill then specifies five acts of the legislature, commencing with Act No. 52 of the Acts of 1868, which it is alleged were passed in direct contravention of the thirty-seventh section of the act of 1852, by which the city has issued bonds to an amount greater than $10,000,000.

The complaint of the bill is threefold: (1) That the city is about to divert to other purposes the tax levied and collected for the purpose of paying interest upon the issues to which the bonds held by complainant belong. (2) That the city has by ordinance authorized the reception of city scrip in payment of the uncollected taxes belonging to the railroad interest fund, for the years from 1860 to 1873, inclusive. (3) That the city has adopted what it calls the premium bond plan, whereby it proposes to pay the principal of bonds not yet due, leaving the bonds of complainant and others of the same issue, and which are now due and payable, unpaid. And the motion now is that the injunction may issue to restrain the city from doing either of the acts complained of.

Now in the case of Maenhaut v. City of New Orleans [Case No. 8,939], I allowed the injunction to restrain the city from diverting to other purposes the tax levied and collected for the purpose of paying the interest upon the bonds of the city, and the case made by this bill is substantially the same in this respect as made by the case of Maenhaut v. City of New Orleans, and as no injury could result to the city from allowing that part of the injunction prayed for in this case, I will allow the injunction to go to restrain the city from diverting the fund raised to pay the interest of the bonds held by the complainant, and others of the same class, to any other purpose.

The second branch of the injunction prayed for by this bill is to restrain the city from receiving scrip in payment of the uncollected taxes belonging to the railroad interest fund, from the year 1860 to 1873, inclusive. The law under which this fund was raised provided that there should be a levy made each year by the city authorities sufficient to pay the railroad bond interest tax of that year, and it is made to appear by affidavits filed in this case, that the interest upon these bonds has been paid for every year from 1860 up to 1873, inclusive. And it is made further to appear that the unpaid taxes belonging to the railroad interest fund of these years cannot be collected at all, or at least can only be collected with great difficulty, unless payment is received in city scrip. Under these circumstances, it appears to me very clear that this motion, addressed

as it is to the discretion of the court, to restrain the city from taking scrip for these years for the interest belonging to the railroad bond fund, should not be allowed. It seems to me that the complainant, in asking this branch of the injunction, is standing in his own light. Even if he had the right, which I think he has not, to demand that the injunction should go for this purpose, it seems clear that all the complainant can demand as a matter of right is, that the tax should be levied from year to year to pay his interest, and that his interest should be paid, and that if there is any surplus for any given year of the interest fund, the city having complied with its contract for that year, he has no right to dictate to the city how that surplus shall be applied. But it is very clear to my mind, knowing, as I am enabled to know from years of observation in this court, the condition of the city finances, that it is impossible to collect these old taxes, running from the years 1860 to 1873, unless they are received in something less valuable than money. It is for the interest of this complainant and all the bondholders, that the city should be allowed to collect this tax in such funds as it is able to use in payment of its debts, and thereby relieve itself of its indebtedness to that extent. The affidavit of the city administrator shows that if these taxes are demanded in money or legal tender currency, they cannot be collected at all. I must, therefore, decline to allow the injunction to go to restrain the city from receiving city scrip in payment of its uncollected tax.

The third branch of the injunction asked for is, that the city may be restrained from applying the funds collected by taxation to the payment of the bonds not yet due, while it leaves the bonds of the complainant, which are due and unpaid, unprovided for.

In the case of Maenhaut v. City of New Orleans [supra], I expressed the opinion, and I still adhere to it, that the provisions of the thirty-seventh section of the act of 1852—that act being, in fact, the charter of the city providing how the debts of the city should in future be created, and limiting the power of the city in the contracting of debts—formed a part of the contract between the city and those who received and held the consolidated debt, and the bonds issued by authority of the provisions of the acts Nos. 108 and 109 of the year 1854. In my judgment the holders of the bonds under these two acts had the right to demand of the city, in accordance with the terms of the thirty-seventh section of the act of 1852, that no further debt or loan should be contracted by the city unless the same should be authorized by the vote of the majority of the voters of the city, and no ordinance creating a debt or loan should be valid unless for some single work or object distinctly specified therein, and unless such ordinance should provide ways and means for the payment

thereof, and such ordinance should not be repealed until the principal and interest of the capital borrowed should be fully paid and discharged. Now, while the holders of these railroad bonds, consolidated bonds, and waterworks bonds had the right to exact these conditions of the city, they have not seen fit to do so, unless we consider this case as brought by these bondholders to enforce these conditions. According to the averments of the bill, bonds to the amount of $10,000,000, or as stated in the argument, $15,000,000, have been issued since the acts of 1854, not in accordance with the terms of these acts. These bonds, it is fair to presume, are in the hands of bona fide holders, and being in the hands of bona fide holders, and the city having authority to issue bonds, the bona fide holders have the right to presume that the conditions precedent have been complied with, and these bonds are valid and binding upon the city in their hands. Van Hostrup v. City of Madison, 1 Wall. [68 U. S.] 291. Now the holders of the consolidated debt bonds, and of the railroad bonds, and of the waterworks bonds, had their remedy to restrain the city from issuing these unauthorized bonds, but they did not resort to it. They have waited supinely until this large mass of bonds has been issued by the city in violation, as I think, of their rights, and until these bonds have passed into the hands of bona fide holders, and it is now too late for them to set up any claim that these bonds are invalid and have no rights as against them or against the city. These bondholders were asleep when they should have been awake. They should have looked after their interests when the issue of these bonds was in fieri, and not have waited until they fell into the hands of innocent holders. So that, in my judgment, these bonds are binding now upon the city, and they are good as against the holders of the bonds regularly issued.

Now, the question submitted to the court is, have the holders of these bonds which I have just named—the railroad bonds, the waterworks bonds and the consolidated bonds—the right to dictate to the city how it shall apply its funds raised by taxation? The right to demand that the fund raised for the interest upon their bonds shall be applied to the payment of their interest is conceded; but in this bill the complainant goes further, and he demands that other funds, not raised specially to pay his interest, or to pay his principal, shall not be applied to the payment of the other bonds; in other words, he asks the court to substitute its discretion for the discretion of the officers of the city in the administration of the finances. If there was any trust fund which he had the right to subject to the payment of his principal or interest, the court would enforce the trust; if he had a lien upon any particular fund, the court would enforce the lien; but he does not make such a claim. He simply asks that the city be restrained from taking its own money and applying it to the payment of its debts according to its own discretion; in other words, to substitute his discretion, and the discretion of this court, for the discretion and judgment of the officers of the city, to whom the law has confided the administration of the city finances. It seems to me that the complainant has mistaken his remedy. He has his bonds and judgment upon them, and he has the right to have a tax levied to pay the principal and interest upon these bonds. That is the only right he has, and that right is only to be secured by the common law remedy of mandamus; but he has no right to demand that the fund raised by the city, not for the payment of the principal and interest of his bonds, should not be used by the city according to its own discretion.

I will allow the injunction to go to prevent the city from using for any other object, any of the money collected for the purpose of paying interest on the bonds of the complainant and others holding like bonds, but I must decline to restrain the city from the receipt of scrip in payment of the interest tax upon all the years running from 1860 to 1873, and must decline to interfere with the premium bond plan, by enjoining the city from paying its debts as it pleases.

[NOTE. Subsequently application was made by plaintiff and others for writs of mandamus to compel the city of New Orleans to levy and collect a tax sufficient to pay the principal of the bonds. To a return made by respondents, the relators demurred. The demurrers were overruled and the writs of mandamus refused. Case No. 15,871. The cause was then carried by writ of error to the supreme court, where the judgment of the circuit court was reversed. 98 U. S. 381.]