(Supreme Court, Special Term, Erie County. May 27, 1908.)

1. MUNICIPAL CORPORATIONS—FINANCES—INVESTIGATION.
   In proceedings to investigate the financial condition of a village under General Municipal Law, Laws 1892, p. 1733, c. 685, § 3, providing for the investigation of the financial affairs of a village on the application of 25 or more freeholders thereof, the court has nothing to do with political questions, or with the wisdom or expediency of village policies, but must make a full investigation of the financial affairs of the village, and determine whether illegal expenditures are contemplated and restrain present illegal expenditures.

2. SAME—POWERS OF MUNICIPAL CORPORATIONS.
   A municipal corporation possesses the powers granted in express words, and those necessarily and fairly implied in or incidental to the express powers, and those indispensable to the declared objects and purposes of the corporation.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 149.]

3. SAME.
   The courts adopt a strict rather than a liberal construction of the powers of municipal corporations, but action of municipal corporations within the limits prescribed by statute will be favored, and not defeated or impaired by harsh construction, though such action is to be held strictly within limits, and any ambiguity or doubt as to the extent of the grant of power will be resolved in favor of the public.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 145–148.]

4. ELECTIONS—INSPECTORS OF ELECTION—COMPENSATION.
   Under Village Law, Laws 1897, p. 389, c. 414, § 85, providing that members of the board of trustees shall be entitled to compensation fixed by law for inspectors of election when acting as such, and Town Law, Laws 1890, p. 1236, c. 569, § 178, fixing the compensation of inspectors of election in towns at $2 per day, unless a higher rate is established in the county by the board of supervisors, the trustees and clerk of a village acting as inspectors of election are entitled only to compensation at the rate of $2 per day until the board of supervisors of the county establish a higher rate.

5. MUNICIPAL CORPORATIONS—ASSESSORS—COMPENSATION.
   Under Village Law, Laws 1897, p. 389, c. 414, § 85, providing that the village trustees shall be entitled to the same compensation as town assessors for each day spent in making the village assessment, and Town Law, Laws 1890, p. 1236, c. 569, § 178, fixing the compensation of town assessors at $2 per day unless the town board fixes a different compensation, the trustees of a village situated in a town whose assessors are entitled to a compensation of $3 per day are entitled to a compensation of $3 per day for each day necessarily spent in making the village assessment.

6. SAME—CONTRACTS—VALIDITY—"OFFICER."
   The treasurer of a village is not an officer within Village Law, Laws 1897, p. 451, c. 414, § 313, providing that an officer shall not be interested

in a contract which he or a board of which he is a member is authorized to make on behalf of the village, since under section 81 (page 388) the village treasurer is not a member of the board of trustees, and is not authorized to make contracts on behalf of the village, so that a contract for public work entered into between a village and a corporation of which the village treasurer is president is not void.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 4933, 4951; vol. 8, p. 7737.]

7. OFFICERS—COMPENSATION—ADDITIONAL COMPENSATION.

A public officer with a fixed compensation is bound to perform the duties of his office for the compensation provided by law, and, where such duties become too onerous, he must secure a lawful increase of salary or resign or submit.

8. MUNICIPAL CORPORATIONS—VILLAGE CLERK—COMPENSATION.

The clerk of a village having a fixed annual salary is not entitled to an additional allowance for work not shown to be outside of his duties as prescribed by Village Law, Laws 1897, p. 389, c. 414, § 82.

9. SAME—APPOINTMENT OF EXPERT ACCOUNTANT—AUTHORITY.

Under Village Law, Laws 1897, p. 391, c. 414, § 88, subd. 1, investing the board of trustees with the management of the finances of the village, the board of trustees of a village has no power to employ an expert accountant to examine the books and accounts of the treasurer, beginning with the organization of the village and including the audit of the accounts of the various departments, unless it appears that the finances of the village cannot be managed and controlled as well without such assistance as with it.

10. SAME.

The board of trustees of a village is an agent with limited powers, and it has no power to make a contract or pay money, unless such power is expressly or impliedly authorized by statute.

11. SAME—EMPLOYMENT OF VILLAGE ATTORNEY.

Under Village Law, Laws 1897, p. 392, c. 414, § 88, subd. 11, authorizing the board of trustees of a village to employ an attorney and pay him a reasonable compensation, the board of trustees of a village may employ a village attorney, and the amount allowed such attorney for services rendered cannot be assailed in the absence of proof that the compensation claimed and allowed was excessive.

12. SAME.

An attorney employed as attorney for a village may present to the village bills for services, and the trustees must determine whether they are reasonable, subject to legal review.

13. SAME—APPROPRIATION OF PUBLIC FUNDS FOR PUBLIC ENTERTAINMENT—VALIDITY.

A municipal corporation has no power to devote the public funds to purposes of public entertainment without express legislative direction.

14. SAME—EXPENSES OF PUBLIC PARADE OF FIRE DEPARTMENT.

Village Law, Laws 1897, p. 393, c. 414, § 88, subd. 22, providing that the board of trustees may provide for the public inspection and parade of the fire department at an annual expense, does not authorize the board of trustees to appropriate money for the purpose of enabling the fire department to participate in a parade held outside the village limits, since the inspection and parade provided for is for the benefit of the village.

15. SAME—BONDS OF PUBLIC OFFICIALS—PREMIUMS—PAYMENT OUT OF PUBLIC FUNDS.

The board of trustees of a village has no power to pay the premiums on the official bonds of its treasurer or other officers, in the absence of legislative authority to that effect.

110 N.Y.S.—64

16. SAME—EMPLOYMENT OF EXPERT ACCOUNTANT.

A proceeding to investigate the financial condition of a village as authorized by General Municipal Law, Laws 1892, p. 1733, c. 685, § 3, is not a proceeding against the village, but is a proceeding against the individuals constituting the board of trustees, and they must defend themselves at their own expense, and they cannot employ at the expense of the village an expert accountant to aid them in such proceeding.

17. SAME—PUBLIC IMPROVEMENTS—LOCAL ASSESSMENTS—STATUTES.

Village Law, Laws 1897, pp. 422, 444, c. 414, §§ 166, 275, authorizing the board of trustees to cause local improvements to be made, in part at the expense of the village and in part at the expense of the property benefited, etc., provide for raising by local assessments the sums to be paid by the property benefited, and it is unnecessary for the village to provide for again raising the same amounts for the same purposes by general tax, and the special provisions of the village law prevail over the general provisions of the municipal law.

18. SAME.

A village provided for local improvements at the expense of the village, and issued bonds therefor maturing in 30 years, and also provided for the payment of 90 per cent. of the cost by assessment on the property benefited, the assessments to be paid in five equal annual installments. *Held*, that the proceeds of the local assessments must be invested as a sinking fund for the purpose of retiring the bonds as they mature, and no annual tax must be levied for the local improvements, except to pay the 10 per cent. share of the village as long as moneys were available for the payment of the bonds from the local assessment fund, and the village would be restrained from using the local assessment fund for any purpose, except for the retirement of the bonds.

In the matter of the investigation of the financial affairs of the village of Kenmore, Erie county, N. Y. Heard on motion for order restraining expenditure of moneys and for other relief after investigation of the financial affairs of the village pursuant to the General Municipal Law, Laws 1892, p. 1733, c. 685, § 3. Relief granted.

George H. Frost, for petitioning freeholders.

Percy S. Landsdowne, for village trustees, etc.

POUND, J. Application having been duly made to me, pursuant to the provisions of section 3 of the general municipal law (Laws 1892, p. 1733, c. 685), by 25 or more freeholders of the village of Kenmore, Erie county, N. Y., stating that they have paid taxes on real property within one year, and that they have reason to believe that the moneys of said village are being unlawfully expended, together with the grounds of their belief, after due notice to the trustees and other officers of said village, I proceeded to make a summary investigation into the financial affairs of said village and the accounts of such officers, and on the 18th day of January, 1908, I made an order appointing Daniel E. Brong, Esq., counselor at law of Lockport, N. Y., as an expert to make such investigation, to take the proofs of the parties, and report the same with his opinion to me. He now reports the results of his investigation, including a voluminous record, much documentary evidence, and a carefully prepared statement of facts found by him and his opinion thereon. Such report is for the information of the court, and his opinions are not binding. With few exceptions, however, I approve of his conclusions, and adopt the same.

It appears from said report that the village of Kenmore is a village of the fourth class, having a population of less than 1,000 persons; that it lies adjacent to the northerly boundary of the city of Buffalo, in the town of Tonawanda, Erie county, N. Y.; and that it was organized as a village in the year 1899 under article 1 of the village law. It has a board of trustees composed of five members, one of whom is president of the village. It has a treasurer and clerk. No separate board of fire, water, light, sewer, or cemetery commissioners has been established, and all the powers, duties, and responsibilities of such boards remain in said board of trustees. For the official year from March, 1906, to March, 1907, the following named persons constituted the board of trustees: Richard D. C. Rudhardt, Robert L. Kimberly, Frank H. Morgan, Phineas N. Haskell, and William G. Ruddle; the said Rudhardt being president. During the official year from March, 1907, to March, 1908, said Rudhardt, Kimberly, Morgan, Haskell, and Albert B. Crary constituted said board; said Rudhardt being president. And at the present time said Rudhardt, Kimberly, Haskell, Crary, and Daniel W. Bailey constitute said board; the said Rudhardt being president. Charles V. Busch now is, and during all the time since the year 1901 has been, the treasurer, and Charles H. Pratt now is, and for two years last past has been, the clerk of said village. The following is a summarized statement of the present financial condition of the village:

| | |
|---|---:|
| Assessed valuation of property, subject to taxation............ | $1,736,048 50 |
| Limit of contract indebtedness............................... | 173,604 85 |
| Bonded indebtedness......................................... | 135,759 90 |
| Liability on temporary loans and certificates of indebtedness.... | 20,137 29 |
| Liability upon outstanding accounts.......................... | 1,100 69 |
| The estimate of annual expenditure for 1907 was.............. | 12,010 00 |
| Cash on hand and in bank.................................... | 32,118 10 |
| Uncollected general taxes in arrears......................... | 10,893 72 |

The inhabitants and electors of the village are, for the most part, divided into two factions or parties, one of which is styled the "Greater Kenmore Party," and the other the "Good Government" or "Citizens' League." The officers of the village government now and for the last several years in office belong to the former party, and the petitioners herein represent the latter organization. While both parties profess to favor the administration of village affairs along progressive lines, it is apparent that the minority is dissatisfied with the policy of extensive and costly improvements as inaugurated by the majority. The limit of the contract indebtedness of the village, as fixed by section 130 of the village law (Laws 1897, p. 412, c. 414), has not yet been reached, but the village has relatively a heavy bonded indebtedness. While this investigation was pending a village election resulted in the continuance in office of the present officials by an overwhelming majority, and it seems clear that said officials have the confidence of the voters, notwithstanding the determined campaign against them on this issue. Political questions having to do with the expediency or wisdom of village policies must be determined by the voters at the polls. As to such questions, the court has no authority, and therefore no concern. On the other hand, questions of the le-

gality of the acts of public officials are not to be determined by popular majorities. The existence of these differences as to men and measures among the voters of the village is referred to only for the purpose of defining the proper scope of this investigation, which is to determine whether any of the moneys of said village have been or are being unlawfully or corruptly expended, or improvidently squandered, wasted, or misapplied, without warrant of law, so that the court may prevent any threatened unlawful use of the moneys of the village. The purpose of this proceeding is, first, to investigate the financial affairs of the village; and, second, to restrain present illegal expenditures. The fullest investigation of such financial affairs is therefore not only proper, but necessary. Matter of Town of Hempstead, 36 App. Div. 321, 55 N. Y. Supp. 345, affirmed 160 N. Y. 685, 55 N. E. 1101.

Petitioners question the legality of many items of expenditure during the past two years. Mr. Brong has carefully examined a large number of disputed claims and accounts, and, for the most part, he finds them regular and proper. Of the accounts deemed by the expert to be of sufficient consequence for separate consideration, I have eliminated a few as being of unquestionable legality or of trifling importance. The oft-repeated and oft-disregarded elementary principles which should control municipal officers in their conduct of public affairs are clear and simple, and are here restated by way of introduction.

1. A municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily and fairly implied in or incidental to the powers expressly granted; third, those indispensable (not simply convenient, but essential) to the declared objects and purposes of the corporation. Dillon on Municipal Corporations, § 89.

2. The courts adopt a strict, rather than liberal, construction of the foregoing powers. Action of municipal corporations within the limits prescribed by statute will be favored, and not defeated or impaired by harsh construction, but such action is to be held strictly within limits, and any ambiguity or doubt as to the extent of the grant of power will be resolved in favor of the public. Dillon on Municipal Corporations, § 91.

Matters deemed by me worthy of specific consideration are the following:

Compensation of Village Officers Acting as Inspectors of Election.

Section 85 of the village law provides that:

"The members of the board of trustees shall be entitled to compensation fixed by law for inspectors of election when acting as such."

During the last two years all the members of the board of trustees and the clerk have acted as inspectors of election at the several elections held, and have charged and have been paid at the rate of $5 per day for their services as such. Compensation of inspectors of election in towns is fixed by section 178 of the town law (Laws 1890, p. 1236, c. 569) at $2 per day, unless a higher rate, not exceeding $6

per day, is established in the county by the board of supervisors. There is no evidence that the board of supervisors of Erie county have established a higher rate than $2 per day, and in my opinion the village trustees are entitled to one day's pay for services on an election day at the rate of $2 per day, until such action has been taken, when they will be entitled to the higher rate.

### Compensation of Village Officers Acting as Assessors.

The village trustees are entitled to "the same compensation as town assessors for each day actually and necessarily spent by them in making the village assessment." Village Law, § 85. So far as the law applies to this case, the compensation of town assessors is fixed at $2 per day, except that the town board of any town may fix a different compensation for the assessors in their town of not less than $2 nor more than $3 per day each. Town Law, § 178. The town board of the town of Tonawanda, in which the village is situated, has fixed the compensation of the assessors of said town at $3 per day. It is claimed by the petitioners that $2 per day is the legal rate. In my opinion the village assessors are entitled to compensation at the same rate as the assessors of the town of Tonawanda, to be paid on itemized and verified accounts showing each day actually spent by them in making the village assessment, and showing that the time was necessarily spent. Competent men, proceeding with due diligence, should not actually and necessarily spend more days in making the village assessment than are included in the period between the beginning of the official year and the time fixed by law when the rolls must be completed. But it does not appear that the village trustees have received unlawful compensation for their services as village assessors.

### Busch & Percival Contracts.

Charles V. Busch is, and since the year 1901 has been, the treasurer of the village. He is the president of the corporation known as Busch & Percival, which is engaged in the engineering and contracting business, having its office in the city of Buffalo. This corporation has acted as the village engineer for practically all the public improvements hereinafter referred to, and received compensation therefor at the rate of 5 per centum of the cost of said improvements. The same corporation has been awarded practically all of the contract work upon the public improvements of the village during the last two years. Mr. Busch's corporation has been the engineer and the contractor, while Mr. Busch has been the treasurer of the village. The board of trustees, and not the engineer, supervised the Busch & Percival contracts on behalf of the village. Mr. Brong reports that searching inquiry has failed to reveal any irregularity or illegality arising out of this situation. I am of the opinion that the action of the board of trustees in this regard has legal sanction, and that the law, rather than the trustees, should be the subject of adverse criticism in this connection. Section 313 of the village law reads as follows:

"An officer shall not be directly or indirectly interested in a contract which he or a board of which he is a member is authorized to make on behalf of the village; nor in furnishing work or materials; nor shall such an officer

act as such in any matter or proceeding, involving the acquisition of real property then owned by him, for a public improvement."

The village treasurer is not a member of the board of trustees, and is not authorized to make contracts on behalf of the village. Village Law, § 81. Construing this section (section 313) literally, Mr. Busch is not within its prohibition. It would seem that in villages the Legislature did not think it necessary or desirable to prohibit all village officers from being interested in village contracts, and so permits such officers to be interested in contracts where other officers of the village make the contract on the part of the village. It is therefore unnecessary to determine whether a stockholder in a corporation is dirctly or indirectly interested, in a legal sense, in a contract with such corporation within the meaning of section 313 of the village law above quoted. On this point, however, see People ex rel. Gaffney v. Mayer, 41 Misc. Rep. 368, 84 N. Y. Supp. 817.

### Compensation of Village Clerk.

The salary of the village clerk is fixed at $250 a year. Mr. Pratt, the village clerk during the past two years, has charged and been paid the sum of $100 for typewriting work. This is for work outside of the transcribing of the minutes of the proceedings of the board of trustees, which has been done by the clerk with a typewriting machine. It does not clearly appear what work is charged for in the item of $100, nor that it is of such a character as is not comprehended within his official duties as prescribed by section 82 of the village law. He is entitled to no extra or additional compensation for his official work in addition to his salary. A public officer with a fixed compensation is bound to perform the duties of his office for the compensation provided by law. If such duties become too onerous, he must secure a lawful increase of salary, resign, or submit. Merzbach v. Mayor, etc., 163 N. Y. 16, 57 N. E. 96. For services not incident to his office he is not debarred from receiving compensation from the village. This rule applies as well to policemen upon whom new duties are cast ex officio.

### Compensation of Expert Accountant.

In the early part of the year 1906 Frank E. Wood, an expert accountant, was employed by the board of trustees to make a general audit of the books and accounts of the treasurer, beginning with the organization of the village and including the audit of the accounts of the various departments, for which, in all, he made a charge of $695, which was paid. The compensation paid is fairly adequate for the services rendered. The question presented was whether the board of trustees had power to make this contract. By section 88, subd. 1, Village Law, the board of trustees is invested with "the management and control of the finances of the village." While the authorities of this state recognize a wide range of implied powers, the board of trustees are agents with limited powers to whom the principle of strict construction is applicable; and they have no power to make a contract or to pay money unless such power is expressly or impliedly

authorized by statute. Village of Ft. Edward v. Fish, 156 N. Y. 363, 50 N. E. 973. Can it be said that the employment of an expert accountant for the above purposes is a necessary or proper incident to the duties imposed upon the trustees to manage and control the finances of the village? Is the employment of such an accountant for such purposes customary and usual? I am of the opinion that it is not, and that the board had no power to employ Mr. Wood in the capacity of an auditor of the books and accounts of the trustees, unless it appeared that such finances could not be managed and controlled as well without such assistance as with it, and that fact does not appear to be established by the evidence.

## Village Attorney.

The board of trustees "may employ an attorney and pay him a reasonable compensation." Village Law, § 88, subd. 11. Opinions may differ as to what is "reasonable compensation," and the sound judgment of the board of trustees based upon actual knowledge of the services rendered should not be assailed in the absence of proof that the compensation claimed and allowed was excessive and unwarranted. No doubt a competent attorney could be employed by the village at a moderate annual salary to render all necessary legal services that he might be called upon to render during the year. As compared with the salaries paid to corporation counsel and city attorneys in cities of the third class, it would seem that the compensation paid to the village attorney was greater than would have been necessary under a fixed arrangement as to an annual salary. If the services of an attorney are regularly required, prudence and sound judgment would dictate the employment of such attorney at a moderate annual salary. In many cities of the third class a salary of $1,000 a year for the city attorney is regarded as adequate compensation for all professional services connected with city affairs required of such official by law or by the common council. A village of less than 1,000 inhabitants could doubtless make a contract for all ordinary legal services for half that sum or less. In justice to the parties it should be stated that Mr. Brong reports that the village attorney has performed burdensome services in connection with the bond issues of the village, and that it does not appear from the evidence that his bills amount to more than what the expert thinks is reasonable compensation. Said bills amount to $1,992.35, already audited and paid, and about $800 not yet presented, and cover the years 1906 and 1907. The village attorney had a right to present these bills, and it was for the trustees to determine whether they were reasonable, subject to legal review. This is not an action by the village attorney against the village where the burden of proof would fall on him.

## Fireworks.

The claim of S. O. Barnum Sons & Co., for $100 for fireworks, paid May 20, 1907, is clearly illegal. A municipal corporation has no power to devote the public funds to purposes of public entertainment of any character without express legislative direction.

### Parade of Fire Department.

The village law (section 88, subd. 22) provides that the board of trustees "may provide for the public inspection and parade of the fire department at an annual expense, including the hiring of a band, not exceeding $200." This does not authorize the board of trustees to appropriate moneys for the purpose of enabling the fire department to participate in a parade held outside the village limits. Custom dictates that there shall be an annual inspection and parade of the fire department. This inspection and parade is for the benefit of the village, and not merely to provide a gala day or outing for the fire department, and the law does not contemplate that any portion of the money so appropriated shall be expended for the purpose of enabling the fire department of the village of Kenmore to take part in a parade in the city of Buffalo, as it seems to have done during "Old Home Week" in 1907.

### Premiums on Official Bonds.

The board of trustees has no power, express or implied, to pay the premiums on the official bonds of its treasurer or other officers. In the absence of legislative authority to make such payments, the same are clearly illegal.

### Expenses of this Investigation.

While the official minutes of the board of trustees indicate that the board has employed an attorney and an expert accountant in its official capacity to defend these proceedings, the attorney who represents them disclaims any intention on his part to ask for payment for his services herein from the village of Kenmore. These proceedings are not against the village, but against the individuals who constitute the members of the board of trustees, and they must defend themselves at their own expense, and not at the expense of the village.

### Local Improvement Bonds and Assessments.

The foregoing questions are of minor significance, and doubtless would not have been brought to the attention of the court except in connection with a matter of far greater magnitude which requires the careful consideration of the court. I quote at length from the report of the expert thereon:

"Another subject, however, which is of much greater concern, and which will no doubt receive the sober and thoughtful attention of all citizens of the municipality, is that of paying off its bonded indebtedness for local improvements. By chapter 24, p. 34, Laws 1907, a bond issue of the village in the sum of $31,000 was validated. This issue was, amongst other things, to provide for the expense of improving Main avenue in the sum of $9,000. In June, 1907, there was a further bond issue for the improvement of East Kenmore, East Hazeltine, East Sanborn, Warren, and Kinsey avenues at an expense of $34,600; and in August following there was a further bond issue for the improvement of West Kenmore, West Tremaine, West Sanborn, East Tremaine avenues, and Eugene street, at an expense of $33,600. All of said bonds were issued pursuant to a vote of the electors of the village, in which questions were duly submitted to them at special elections, and such bond issues were authorized. At the same time, however, it was also provided that 90 per cent. of the cost of the improvement of said 11 streets should be borne by the owners of the property abutting upon said streets, and that 10 per cent. thereof should be borne by the village at large, and

that said 90 per cent. should be raised by local assessment upon said property. In such act of the Legislature and each of the several resolutions of the board and said village elections it was also provided that the village should in each year, by taxation, raise a sum sufficient to pay the interest and principal from time to time accruing upon the whole amount of said respective bond issues, which has thus far been done, and, in carrying out the provisions of said act, said resolutions and said elections will be done in the future. Said bonds so issued are payable in 30 equal annual installments, with interest, and said local assessments are payable in 5 equal annual installments, with interest. Some of said local assessments were paid in in advance, during the 10 days elapsing after notice thereof was given as provided by statute. Up to the present time upwards of $13,000 has been collected and paid into the village treasury upon said local assessments, and it has been sought to create a sinking fund therewith, together with other funds, amounting in all to the sum of $22,817.49. The sum of $17,924.98, part thereof has been loaned from said so-called sinking fund to the village for various purposes, other than the payment of said bonds, upon certificates of indebtedness issued by it from time to time, and now outstanding, unredeemed, and unpaid. Subdivisions 6 and 7 of section 128 of the village law provide for a water sinking fund and a light sinking fund; and no other sinking funds are provided for by the village law. Section 127 provides for the investment of such funds. These provisions do not relate to the so-called sinking fund above referred to.

"In view of the determination to apportion the expense of the several street improvements between the village at large and the adjoining property owners, apparently the only bonds the village could issue in the first instance would be those which would relate to the payment of its own portion of the indebtedness, and bonds to the extent of 10 per cent. of the total cost of the improvements should have been issued, pursuant to section 129 of the village law. The assessment should then have been laid upon the property abutting upon the streets, as provided by section 166; and, after the lapse of the notice of 10 days as therein provided, the time would have arrived for the issue by the village of its 'bonds or certificates of indebtedness' for the aggregate amount of the assessments then remaining unpaid; and the time of the payment thereof would naturally have been made to quadrate, as nearly as was practicable, with the time when the local assessments would be paid in from year to year, thus avoiding the necessity of a sinking fund. The method of procedure here suggested will give legitimate force to all the pertinent provisions of law. Section 5 of the general municipal law, being general in its character, would be held applicable to the bonds issued by the village for the payment of its share of the indebtedness, viz., 10 per cent. of the cost of construction.

"There is no force in the suggestion that section 168 of the village law prevents an assessment until the work has been actually done, because not only is such construction unnecessary, but renders it inharmonious and impossible in connection with section 166. Nor can the contention prevail that bonds or certificates of indebtedness issued under section 166, without observing the requirements of section 5 of municipal law, would not find a ready sale in the money market. The harmony and scope of a comprehensive system of legislative enactments cannot be disturbed for the sake of mere expedience.

"It will be further observed that by section 128 moneys borrowed in anticipation of taxes by way of temporary loans must be payable within the current fiscal year, and that the borrowing of money by the village from the so-called sinking fund, and the consequent accumulation of village indebtedness upon temporary loans from that fund, could have no other result than an evasion of that provision of the village law, as well as the illegal application of the moneys raised by local assessment. In short, the condition presented is that this village, having already provided for the payment of the whole cost of the construction of the improvement upon the eleven streets above referred to, by the terms of its bonds, with interest from year to year, by general taxation, is also raising another fund by local assessment, amounting to 90 per cent. of the cost of that construction for the disposition of which it has no legal powers."

The bonds of the village have been issued for the improvement of certain streets and highways to the amount of $99,260. All of said bonds were issued pursuant to a vote of the qualified electors of the village, on resolutions duly submitted to them by which such bond issues were authorized. By chapter 24 of the Laws of 1907 a bond issue of the village in the sum of $31,000, included in the foregoing amount, was expressly validated, and the village was directed to collect annually, by general taxation, the amount necessary to pay the accruing principal and interest on said bonds. These bonds are so issued that the principal thereof does not fully and entirely accrue and become due and payable until 30 years from the date of the issue. The village law authorizes the board of trustees to cause highway improvements to be made wholly at the expense of the village and to issue bonds for the purpose of paying the same, and the village has voted to raise the entire amount of the cost of the foregoing improvements by annual tax, as the said bonds become due.

Section 5 of the general municipal law reads as follows:

"5. Funded Debt. A funded debt shall not be contracted by a municipal corporation, except for a specific object, expressly stated in the ordinance or resolution proposing it; nor unless such ordinance or resolution shall be passed by a two-thirds vote of all the members elected to the board or council adopting it, or submitted to, and approved by the electors of the town or county, or taxpayers of the village or city when required by law. Such ordinance or resolution shall provide for raising annually, by tax, a sum sufficient to pay the interest and the principal, as the same shall become due."

In Canandaigua v. Hayes, 90 App. Div. 336, 85 N. Y. Supp. 488, it was held that proceedings for the issue of village bonds were fatally defective when the resolution failed to state the installments in which the bonds were to be made payable and to provide expressly for raising, by annual tax, the amounts necessary to pay the same as they became due. Through a misunderstanding, as it seems to me, of the application of said case, which applies only to bonds issued for the purpose of paying the village's share of the expense, the entire expense of the foregoing improvements was imposed upon the village at large, although the intention was ultimately to charge the village with but 10 per cent. of the cost of the improvement and to assess the remaining 90 per cent. upon the property benefited, in accordance with the provisions of the village law applicable thereto. The village law authorizes the board of trustees to cause local improvements to be made in part at the expense of the village and in part at the expense of the property to be improved, and regulates the procedure in this regard by providing that, when part of the improvement is to be paid for by the village and part by the property benefited, bonds or certificates of indebtedness may be issued by the village to pay the portion to be borne by the village, the balance to be assessed on the property benefited. The owners then have the option of paying their assessments in full in 10 days, but, failing to do so, bonds or certificates of indebtedness may then be issued for the aggregate remaining unpaid. These latter bonds or certificates are not paid by general taxation, but the assessments to pay the same are levied on the lots or parcels in default. Village Law, § 166; Id. § 275. The village law provides automatical-

ly for raising by local assessment, the sums to be paid by the property benefited, and it is wholly unnecessary for the village to provide for again raising the same amounts for the same purposes by general tax. The special provisions of the village law must prevail over the general provisions of the municipal law. At the same time that the resolutions were adopted providing that these improvements should be made at the expense of the village and bonds should be issued therefor, resolutions were also adopted providing for the payment of 10 per cent. of the cost of the same improvements by the village and the assessment of the remaining 90 per cent. upon the property benefited.

We thus have in the case of one issue of bonds a special legislative requirement that the village shall annually levy a tax sufficient to pay the interest and matured principal of said bonds until the same shall be fully paid, and in all cases we have the same action on the part of the village by resolutions under the general act. We have also the resolutions of the village in each case assessing 90 per cent. of the cost of the same improvements upon the property benefited. The assessments are payable in five equal annual installments, and, as has been indicated, the bonds will not all mature for 30 years. If both resolutions are complied with, the village will in the end raise 190 per cent. of the cost of the improvements, exclusive of interest, 100 per cent. by general taxation, and 90 per cent. by local assessments. If the board of trustees does not exercise the power and authority given it to levy annually a tax sufficient to pay the interest and maturing principal of said bonds until the same shall be fully paid, and if the board of trustees raises but 10 per cent. of the necessary amount, being the share of the village within the contemplation of the voters at the special elections at which the bond issues were authorized, then the result will be that the village will collect 90 per cent. of the cost of the improvement by local assessment in five equal annual installments, and will be compelled to retain portions of this amount for a long period of time for the purpose of the payment of the bonds as they mature. Either method would seem objectionable. Neither method would seem to have the authority of law. The bonds are the valid and subsisting obligations of the village, and must be paid. The proceeds of the local assessments should be invested as a sinking fund, and kept sacred for the purpose of retiring the bonds as they mature. No annual tax should be levied for said local improvements, except to pay the village's share of 10 per cent., so long as moneys are available for the payment of said bonds from the local assessment fund. I am satisfied that none of the money arising from such local assessments can be lawfully expended for or appropriated to any purpose other than as above indicated, and that it is improper to borrow therefrom for the purpose of meeting the running expenses of the village; and I shall grant an order restraining such unlawful expenditure as improper use of the money, and shall direct that all loans from the fund created by such local assessment be repaid by the village with all convenient speed, and that the proceeds of said local assessments be deposited by said board of trustees with some duly authorized depository, to be paid out only for the retiring of the aforesaid local improvement

bonds, to the end that said unlawful expenditures may be effectively restrained.

I am of the opinion that the freeholders, petitioners herein, were justified in making application to the court for an investigation of the financial affairs of the village, and that the facts alleged in their moving papers have been substantially proved, and I direct that the costs incurred in this investigation, to be taxed by me, shall be paid, upon my order, by the officers whose expenditures have been investigated.

Prepare order in accordance with above for settlement before me on five days' notice.