FORREST J. HYDE *et al.*, AS COUNTY COMMISSIONERS OF DU-
VAL COUNTY, *et al.*, *Appellants*, v. SAMUEL J. MELSON
AND A. M. MORGAN, *Appellees*.

Under section 2 chapter 5884 Laws of 1909, and other cognate
    statute, prescribing the duties and limiting the powers of
    county commissioners with reference to levying and disposing
    of taxes for county schools and other purposes, the county
    commissioners are not authorized to use a tax levied in a
    particular year to pay the outstanding indebtedness of their
    county, as a part of the general revenue of that year for
    paying for the cost of resurfacing, paving, grading and shell-
    ing highways contracted for in that year; and an injunction
    will lie at the suit of taxpayers of the county to prevent such
    a use of such taxes.

This case was decided by Division B.

Appealed from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Kay & Doggett,* for Appellants;

*Axtell & Rinehart,* for Appellees.

HOCKER, J.—Appellees as tax payers of Duval county filed a bill and a supplemental bill in the Circuit Court of Duval County against appellants, the purpose of which bills was to enjoin the county commissioners from contracting for resurfacing or paving three highways in said county, to-wit: from contracting for paving Panama Road from Phoenix Park to Whitaker Avenue at a cost of about $9,000, grading and shelling Sixty-fourth Street from St. Johns Avenue to old Orange Park Road at a cost of about $6,000, and for grading Lake Shore Boulevard from old Orange Park Road to the Middleburg Road at a cost of about $2,500. It is alleged that the bids for doing these several items of work were accepted December 29th, 1910, and that these transactions were void because there was not sufficient funds arising from the revenues applicable to such work for the year 1910, to pay the cost of the work.

The available revenues of the county are set forth in the bills, from which it appears there will be a deficit in the General Revenue Fund for 1910. To overcome this contention the answer of the county commissioners sets up the sources of revenue for 1910, as follows:

The five mill tax will yield.................. 101,393.66
The estimated revenue from licenses.......... 85,000.00
From lease of convicts....................... 15,000.00
The levy of 3 ½ mills tax for the payment of the

outstanding indebtedness of the county will
yield .................................... 70,975.53
Cash to credit of the General Revenue Fund
at the date of filing the bill................ 822.12

Making a total of.......................$273,191.31
Against this showing of resources the answer
shows various liabilities in warrants and ex-
penses, and including the cost of the proposed
work of .................................. 221,234.51

Leaving a balance of..................... 51,956.80

The answer also sets up as an asset of the county the proportion of Duval county in unpaid back taxes extending over a period of thirty-one years of $17,067.81, and on the basis of this statement of assets denies the allegation of the bill that the doing of the contemplated work will create a deficit. The Circuit Judge granted an injunction, from which order an appeal was taken to this court.

It seems to us that the alleged asset of unpaid back taxes is entirely too problematical and speculative to be considered as of any value in a calculation of the real assets of the county presently applicable to the purposes of the contemplated work.

It seems to us that the whole defense of the county commissioners turns upon the question whether they can consider the money to be collected on the $3\frac{1}{2}$ mill levy to pay the outstanding indebtedness of the county in 1910 as a part of the general revenue for 1910, for paying for the cost of the work on these roads.

Section 2 of Chapter 5884, Laws of 1909, prescribes the duty and authority of county commissioners in levying county taxes—For county purposes including current ex-

penses, interest on bonded debt, bridges and county buildings and to meet expenses, a tax of not more than five mills on the dollar on real and personal property of the county may be levied, and no more may be levied for those purposes.   The section also provides for a levy of not over seven mills, nor less than three, for county school purposes, and also provides that an additional tax not to exceed four mills on the dollar each year to pay all outstanding indebtedness and interest thereon.   The section also provides that this act shall not be construed so as to prohibit any county from levying the taxes now provided by law for erecting a court house, jail, or constructing paved, macadamized or other hard surfaced highways, except that the provision relating to taxes for working roads shall not apply to counties working roads under special laws. Lastly, this section provides for the levying of a tax not exceeding three mills on the dollar to be used exclusively for the purpose of constructing paved, macadamized or other hard surfaced roads, in counties not constructing such roads as now provided by law, and in counties not working under special laws.

It is thus apparent that the General Revenue Fund, or the fund raised by the tax for county purposes, is separated and distinguished from the funds raised for school purposes—from the funds raised for paying outstanding indebtedness and other purposes.   It was the clear purpose to keep these various funds separate from each other, and have them used for separate purposes. · This is made the more evident when we consider the terms of sections 781 to 785 of the General Statutes of 1906, brought forward in our system from the Act of 1877.   These several sections provide stringent regulations for issuing warrants —each warrant must be drawn on the fund for which it was raised, and the various funds must be kept separate

from each other. The county commissioners have no right to ignore the provisions of the law prescribing their powers and duties.

In the instant case the proposed action of the county commissioners in using the money to be raised for the payment of outstanding indebtedness, as a part of the general revenue to be expended upon road improvement such as that described in the pleadings is, it seems to us, in clear violation of the statute law.

No question of the power of the county commissioners in disposing of a purely surplus fund is raised by the record.

The order granting the injunction is affirmed.

TAYLOR and PARKHILL, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.