KENNETH M. KEEFE, JOHN S. HARRIS, HENRY HART AND
FRED P. HAYWARD, *Appellants*, vs. HENRY W. ADAMS,
JR., R. G. BLANC, WILLIAM J. CERMACK, J. WALTER LA-
NIER, GLENN MILLER, FREDERICK W. WEBSTER AND ALVIN
J. WOOD, individually and as and constituting the City
Council of the City of St. Petersburg, Florida, W. M.
COTTON, individually and as City Manager of said City,
FRANK WILSON, individually and as Director of Finance
of said City, and THE CITY OF ST. PETERSBURG, a muni-
cipal corporation, *Appellees.*

STATE OF FLORIDA, ex rel., KENNETH M. KEEFE, et als.,
*Plaintiff in Error*, vs. W. M. COTTON, as City Manager,
et als., *Defendants in Error.*

143 So. 644.

Division B.

Opinion filed September 27, 1932.

*Fleming, Hamilton, Diver & Lichliter* and *L'Engle &
Shands,* for Appellants and Plaintiff in Error;

*Erle B. Askew, Carroll R. Runyon* and *Kay, Adams, Ragland & Kurz,* for Appellees and Defendants in Error.

TERRELL, J.—We are confronted here with a writ of error from a judgment quashing an alternative writ of mandamus and an appeal from a decree denying a temporary restraining order. As to the mandamus proceeding it appears that in February, 1932, the State on relation of John S. Harris and others filed its petition for alternative writ of mandamus against W. M. Cotton as City Manager, and Frank Wilson as Director of Finance of the City of St. Petersburg, commanding them to transfer and pay to' relators specified amounts due them on certain coupons more particularly described therein or show cause why they refuse to do so. A motion to quash the alternative writ was granted and petition was dismissed. Writ of error was taken to that judgment.

As to' the injunction suit, it appears that in June 1932 immediately after the motion to quash was granted Kenneth M. Keefe and others filed their bill of complaint against Henry W. Adams, Jr., and others, individually and as members of the City Council of the City of St. Petersburg. This bill of complaint was predicated on the same grounds as the alternative writ in the mandamus suit and in addition thereto embraced allegations as to seven other mandamus suits, subsequently filed, but of the same nature as that in which the writ of error was taken. The prayer of the bill seeks to hold in status quo, the funds pursued in the mandamus suits and to require payment to complainants of fifty-three per cent. of designated future collections. A temporary restraining order was denied on the same grounds that the alternative writ was quashed and appeal was taken from that decree. For the purpose of holding the res intact this Court made an order in aid of its appellate jurisdiction as authorized by Section Five of Article Five of the Constitution.

The writ of error and the appeal urge the same questions for adjudication by this Court. The two causes have been combined and treated together as appellants and appellees in the briefs of counsel for both sides so we will pursue the same course in our treatment of them.

Both causes arise out of the following facts. Pursuant to requirement of its Charter, Chapter 15505 Acts of 1931, the City of St. Petersburg, in August 1931, adopted its budget for the fiscal year ending September 30, 1932, and passed a resolution fixing its tax levy for the like period. The tax levy enumerated sixteen items for which taxes should be assessed and collected and designated the amount of millage to each item. The largest single item was "interest on bonds" which embraced approximately fifty-three per cent. of the entire levy. The other fifteen items enumerated the general operating purposes or functions of the City. At the time the budget and tax levy were adopted the city had outstanding $23,000,000, in bonds on which interest had accrued, its assessed valuation was $125,000,000 and for the fifteen months period to September 30, 1932, it was found that it would take about $2,873,000 to pay accrued interest on bonds in addition to general operating expenses.

From the adoption of its budget and tax levy resolution in August, 1931, to January 12, 1932, it is shown that the city in keeping with the terms of said resolution allocated each dollar as received, fifty-three per cent. to "interest on bonds" and forty-seven per cent. to the various items of operating expenses, but on January 25, 1932, it adopted a new resolution reciting in effect that only $942,363.28 had been collected from the 1931 tax levy, that $666,000 more would be required for operation expenses of the City for the current year and that instead of following the past practice of allocating the taxes as received to the different items for which collected the City would, from January 1,

1932, appropriate all taxes to operating expenses until its forty-seven per cent. had been accumulated after which all amounts collected would be appropriated to ''interest on bonds.''

February 1, 1932, following the adoption of the latter resolution the mandamus suit, writ of error in which is now before us, was instituted to require the city to pay and allocate to ''interest on bonds'' as and when collected, fifty-three per cent. of all tax moneys received from the time it suspended such payments to the date of the alternative writ. Between February 1 and June 1, 1932, seven other mandamus suits were instituted with similar object in view. On the date the final judgment in the first mandamus suit was entered the bill of complaint was filed seeking to restrain the City from expending the fifty-three per cent. of the tax collections previously collected and allocated to ''interest on bonds'' and to restrain it from expending more than forty-seven per cent. of all future collections for general operating expenses.

Several questions are argued in the briefs but the combined cause turns on the controlling question of whether or not under its Charter power the City of St. Petersburg may adopt its budget and tax levy resolution assessing an adequate millage for ''interest on bonds'' and for the different items of general operating expenses and subsequently at will divert all collections appropriated for ''interest on Bonds'' to operating expenses.

Chapter 15505 Acts of 1931 being that part of the city charter which among other things defines its fiscal policy, provides for a ''Council-Manager-Plan'' of government for the City of St. Petersburg. Section Thirteen of this act provides a system of budgetary control for financing the various departments and divisions of the city government. To effect such a system it is required that the fiscal year begin with the first day of October and continue through

the thirtieth day of September of the following year, that annually as required by the City Manager the chiefs of the departments and divisions of the City shall prepare and submit to the city manager detailed information and estimates of expenditures and revenues of their respective departments and divisions for the ensuing year, from this information and estimates the city manager is required to submit to the city council on or before the first day of June of each year a budget estimate of the expenditures and revenues of all city departments, divisions, and officers for the ensuing fiscal year. On receipt and review of the budget estimate the city council is required to prepare and pass an appropriation ordinance on or before the first day of August of each year, said ordinance to be based on the city manager's estimate but the items therein may be raised or lowered and the ordinance must be published and an opportunity be given for those who so desire to be heard in reference thereto before the city council sitting as Committee of the Whole.

Pursuant to the requirement of Section Thirteen of Chapter 15505, Acts of 1931, the City Manager submitted his estimates to and the city council, on August 17, 1931, prepared and passed the prerequisite appropriation ordinance, section eleven of which appropriated the required amounts for "interest on bonds" and other operating expenses of the city. When the appropriation ordinance was passed the city council ascertained that it would be necessary to raise $2,594,304.50 of the amount appropriated from taxation and forthwith adopted its resolution levying twenty-one mills on the dollar, on the assessed valuation of all property subject to taxation in the city. Of this levy more than eleven mills, or approximately fifty-three per cent. was imposed for "interest on bonds" and the remainder of forty-seven per cent. was distributed to the various departments for operating expenses. The fact that

the appropriation ordinance was not passed on or before August first is immaterial. It was a continuing duty and imperative that it be done. Stieff vs. Hortwell, 35 Fla. 606, 17 So. 899.

Appellants contend that under such circumstances the tax levy and the appropriation were inviolate to the purpose for which they were levied and appropriated and that they cannot now be diverted to other city purposes while appellees contend that they were general and subject to be used for any municipal purposes in the discretion of the City Council.

The view as contended for by appellants is without doubt the correct one. The budgetary fiscal policy grew out of the exigencies of government precipitated by modern economic and social conditions. Under our primitive democracy the sole function of government was police protection but in more recent times, local, state, and national governments have assumed responsibility for educating the youth, building roads and streets, providing parks and playgrounds, offering sanitary and medical service for man and beast, warding the insane, the mute, and the blind, pensioning the aged and the infirm, offering other services to its people too numerous to relate and embarking in still other enterprises without number in the interest of the public good. It is therefore imperative that such a fiscal policy be adopted to restore governmental entities to a sound financial basis, to confine expenditures within appropriations, to adequately protect every legitimate undertaking of the government to prevent the borrowing of money for current expenses except under rigid restrictions, to confine the making of long time loans to permanent improvements, to keep the public apprised of the fiscal condition of the government, to safeguard the public interest, afford data for intelligent action on financial matters, and to enthrone common honesty as a virtue admirable alike in

government and citizen. Flood vs. Hodges 231 Mass. 252, 120 N. E. 689; Mackey vs. Mayor et al., 101 N. J. L. 250, 128 Atl. 859; Graves vs. Berry 35 Idaho 498, 207 Pac. 718.

The whole tenor of Section Thirteen of Chapter 15505, Acts of 1931 and other provisions of the City Charter including the appropriation ordinance and the resolution fixing the tax millage support this view, while to approve the policy as contended for by appellees would in effect destroy the integrity of the budgetary policy and revert to the confusion it was designed to cure. This view is further supported by the fact that every act; (Section 94 of Chapter 6772 Acts of 1913 and Chapter 13377 Acts of 1927), under which the bonds brought in question were issued requires that the city council shall make adequate assessment of taxes to meet interest and retirements of said bonds as and when they become due and to segregate such assessments when collected for that purpose. In the absence of a contrary showing, Section 20 (E) of Chapter 15505, Acts of 1931, recognizing the obligation of the bonds we must assume that the provision of the appropriation ordinance and the assessment resolution were in response to this requirement and to permit said funds to be diverted to other purposes would be an impairment of the contract as expressed in the bonds. Chamberlain vs. City of Tampa 40 Fla. 74, 23 So. 572; Hyde vs. Melson 61 Fla. 643, 55 So. 79; Harrell vs. Woodberry 62 Fla. 205, 56 So. 297; Keech vs. Joplin 157 Cal. 1, 106 Pac. 222; Butts County vs. Jackson Banking Co. 136 Ga. 719, 71 S. E. 1065; *In re* Village of Kenmore 110 N. Y. Supp. 1008; City of Austin vs. Cahill 99 Tex. 172, 88 S. W. 542, 89 S. W. 552; Abbott Public Securities, Section 371; Cooley on Taxation (4th Ed.) Section 1819; McQuillan Municipal Corporation (Second Edition) Vol. 5, 989, par. 2350, where it is said that an appropriation by the council for a department is an authorization to those in charge to incur debts and pay

bills out of such appropriation, the general rule being that when municipal funds are appropriated for a general or specific purpose they cannot be diverted to any other purpose.

In Austin vs. Cahill, supra, it was held that when a city makes a valid contract for a bond issue, in which it stipulates to levy a definite tax for the payment of the bonds, subsequent legislation withdrawing or limiting the taxing power, without providing a substantial equivalent or otherwise affecting the validity or means of enforcement of the bonds, violates the obligation of the contract, within the inhibition of the Constitution of the United States, (Section Ten of Article One) and cannot affect the rights of the bondholders to an assessment, levy and collection of taxes in accordance with the terms of the contract under which the bonds were issued, and in disregard of the invalid legislation. This court has approved the rule that bond interest millage is special tax and must be kept separate under the acts requiring its assessment and collection. Chamberlain vs. City of Tampa and Hyde vs. Melson, supra.

But it is contended by appellees that the transfer of the funds from "interest on bonds" to general operating expenses was essential in order to enable them to carry on the normal governmental functions of the city and that to invalidate such transfer would deprive the city of its means to protect property, maintain order, ward off disease, and perform other duties devolving on it.

This contention was answered fully in Chamberlain vs. City of Tampa, supra, where the Court held that while such critical periods will often occur in corporate as well as individual affairs whenever necessary expenditures exceed possible incomes, but they can furnish no excuse for a municipal corporation to divert its revenues from their legitimate purpose to another not authorized by law, how-

ever beneficial or meritorious. Harrell vs. Woodberry and Hyde vs. Melson, supra; County Commissioners of Columbia Co. vs. King 13 Fla. 451; Klemm vs. Davenport, 100 Fla. 627, 129 So. 904; State *ex rel.* Dos Amigos, Inc. vs. Lehman 100 Fla. 1313.

That the Director of Finance and the city manager may have transferred and credited bond interest funds to other city funds is immaterial. The holders of the bonds may enforce by mandamus the proper transfer and recredit of the funds and may enjoin any further diversion of them. Eidemiller vs. City of Tacoma 14 Wash. 376, 44 Pac. 877; Rice vs. Walker 44 Ia. 458; Bilby vs. McKenzie 112 Cal. 143, 44 Pac. 341; People ex rel. Dannat vs. Comptroller of the City of New York 77 N. Y. 45; Ranger vs. City of New Orleans 2 Woods 128, 20 Fed. Cas. 11564, page 267; Chaffraix vs. Board of Liquidation 11 Fed. 638; Oconto City Water Supply Co. vs. City of Oconto 105 Wis. 76, 80 N. W. 1113; Trustees of the Internal Improvement Fund vs. Bailey 10 Fla. 112; Maenhaut vs. City of New Orleans, 2 Woods 108, 16 Fed. Cas. 8939, page 377.

For the reasons announced in this opinion both the judgment and the decree of the court below viz: quashing the writ of mandamus and dismissing the petition and denying the temporary restraining order must be and are hereby severally reversed.

Reversed.

WHITFIELD, P.J. AND DAVIS, J., concur.

BUFORD, C.J. AND BROWN, J., concur in the opinion and judgment.

ELLIS, J., dissents.

BROWN, J., concurring.—The maintenance of the primary and essentially necessary governmental functions of the municipality is a paramount consideration and the necessary means must in some way be provided therefor, but I

742

do not think this can be done by an illegal diversion of taxes levied for another and different purpose.