STATE OF FLORIDA, ex rel. KENNETH M. KEEFE, et al., *Relators*, vs. THE CITY OF ST. PETERSBURG, a municipal corporation, et al., *Respondents*.

144 So. 313-671.

145 So. 175.

En Banc.

Opinions filed November 7 and 30, 1932, and Jan. 2, 1933.

*E. J. L'Engle, F. P. Fleming, J. W. Shands* and *J. M. Bryant,* for Relators.

*Erle B. Askew* and *Carroll R. Runyon,* for Respondents.

PER CURIAM.—This is a mandamus proceeding by bond holders of the City of St. Petersburg seeking to require the respondents, as city officials, to revise their budget and to levy taxes necessary to pay the interest on the bonds which relators hold.

One of the commands of the alternative writ is that a single and uniform rate of taxation be required to be levied over all of the property in the city, as the limits thereof are defined by Chapter 15505, Special Acts 1931, Laws of Florida. The city officials resist this command on the ground that it is inconsistent with the practice which the city has consistently followed in the past, in the belief that it had no authority under the law to disregard the provisions of certain annexation ordinances adopted by the city under Section 3054 C. G. L. 1921 R. G. S., *et seq.* These ordinances were to the effect that areas annexed to the City of St. Petersburg under such ordinances should not be taxed for principal, interest or sinking fund of bonds of the city outstanding at the time of the respective an-

nexation proceedings. Under such ordinances zones 1, 2, 3 and 4 were provided for, each of such zones representing an area of the City of St. Petersburg as its limits were defined, when certain of relators' bonds were issued. To grant the command of the alternative writ of mandamus as it is now drawn, would require us to disregard the zone system which the city has set up and heretofore followed, for handling its taxes. To exact the levy of a uniform tax rate over the entire city for its bonded debt, would require us to disregard those express provisions of the annexation ordinances which undertook to protect the annexed areas from being taxed by the city authorities for previously issued bonds authorized by the city before the annexation occurred.

It is a universally accepted and fundamental tenet of municipal security law, that all the provisions of the statutes and ordinances of a city in force at the time that public securities are issued and sold, become a part of the city's contract with its security holders. Dos Amigos vs. Lehman, 100 Fla. 1313, 131 Sou. Rep. 533. Relators admit this rule to be applicable to the bonds they hold. And in the case at bar they admit also, that under its operation and effect as applied to the present proceeding, they have no contract rights under their bonds to hold subsequently annexed territory *contractually* liable for taxation to pay principal, interest and sinking fund of such of their bonds as were issued before the annexation took effect under the ordinances which expressly preserved the freedom of the added territory from liability for such pre-existing bonded debts.

But relators say that their request for a uniform tax levy upon all of the property in the city as now constituted under the 1931 charter, is predicated upon the theory that new charter acts of the legislature have been enacted after the annexation ordinances were adopted and that these sub-

sequent legislative acts have withdrawn the right of the city as now constituted to continue to levy a less rate of tax upon property in zones 2, 3 and 4 than in zone 1. Such subsequent legislative acts are alleged to be Chapter 13377, Special Acts 1927, Chapter 14389, Special Acts 1929, and Chapter 15505, Special Acts of 1931.

The evident purpose of this mandamus suit is to enforce the contract rights of the relators as holders of outstanding bonds of the City of St. Petersburg. But such contract rights admittedly do not include a right on the relators' part to demand a uniform levy over the entire territorial limits of the city, since the present limits of St. Petersburg embrace territory annexed to the municipality under valid ordinances which provided that the annexed territory should not by reason of the annexation alone become liable to be taxed to pay the bonded debts of the city which were incurred prior to the annexation. Such ordinances being valid, they must accordingly be given effect unless some subsequent act of the legislature can be found which by its enactment has either expressly, or by *necessary* implication, repealed the provisions of the annexation ordinances under consideration. But relators contend that such subsequently enacted legislation exists. And in support of their argument to this effect they say that Chapter 13377, Acts of 1927, as amended by Chapter 14389, Acts of 1929, were complete in themselves and set up a scheme of taxation for the city which by necessary implication, if not expressly, effected a repeal of the prior legislative authority of the city to continue to maintain its zone system of tax levies for its bonded debt, in order to comply with the provisions of the annexation ordinances provided for exemption of annexed areas from taxation to pay pre-existing debts. Relators argue also that the only way a conclusion to the contrary could be arrived at, would be on the theory that the ordinances annexing zones 1, 2, 3 and 4

to the city are still in full force and effect despite the enact-ment of Chapters 13377, Acts of 1927, 14389 Acts of 1929 and 15505, Acts of 1931.

A majority of the court are of the opinion that under the acts of the legislature just mentioned, the several ordi-nances annexing zones 1, 2, 3, and 4 to the City of St. Petersburg are still in full force and effect, and are still binding upon the relators because each of said subsequently enacted charter acts expressly provides for continuing in full force and effect all pre-existing outstanding municipal ordinances not in conflict with the terms of the acts them-selves. A majority of the court are likewise of the opinion that despite the general terms of the legislative acts re-ferred to, there is no necessary conflict between the scheme of municipal taxation set up by such acts, and a continued recognition of the validity of the annexation ordinances as a limitation upon the city's right to tax the annexed terri-tory for prior debts.

The annexation ordinances were passed under a general law of the state in force at the time relators' bonds were issued. See Section 3054 C. G. L. et seq. The provisions of such general law, while not amounting to a contract be-tween the City of St. Petersburg and the taxpayers of the annexed territory, were nevertheless intended to confer upon the inhabitants of the territory annexed, a valuable guaranty of law that the annexed territory would not thereafter be held liable to taxation for debts issued by the city before the annexation took place, unless future legis-lation should be passed expressly repealing such guaranty and making such annexed territory so liable.

This court has held that where territory has been an-nexed to a municipality under said general law, the ex-emption from taxation of the annexed territory applies only to the original bonds which were issued and outstanding before the annexation took place, and that such exemption

is one which can be dispensed with by future legislative action since the inhabitants of the territory exempted acquire a statutory, but not a contractual right, to insist upon the continuance of their exempt status so long as the statutory law remains unchanged. See State vs. City of Miami, 103 Fla. 54, 137 Sou. Rep. 261.

But this court also regards the proposition to be sound, which holds that when the Legislature passes a municipal charter act, and in such act recognizes and continues the existence of all outstanding municipal ordinances, including annexation ordinances operating as a limitation upon the city's right to tax the inhabitants of annexed territory for bonded debt incurred before their property was annexed, that in order to authorize the municipality to depart from the limitations imposed by the ordinances of annexation, specific and express language must be set forth in such new charter act clearly showing an intention on the part of the Legislature to nullify and supersede the terms of the annexation ordinances which were intended to confer a valuable privilege on the inhabitants of the annexed territory to be exempt from taxation for debts they had no voice in making, which valuable privilege is to be regarded as operating as a *continuing* limitation upon the taxing authority of the municipality until such limitation has been expressly repealed, or repealed by the necessary implication of language of such clear import, that no other reasonable intent is deducible therefrom.

The recognition of this rule imposes no hardship upon bondholders, nor does it in anywise impair their rights as such. Under it the bondholders of the city get all that their contract calls for and are only denied the benefit of an additional right claimed which rests on uncertain or doubtful language in a statute which should not be construed as intended to take away valuable privileges from the people, unless such a conclusion is inescapable.

A reasonable interpretation of Chapters 13377, 14389 and 15505, supra, discloses no intent on the part of the legislature in enacting them, to destroy the limitations previously imposed upon the taxing power of the City of St. Petersburg by the terms of annexation ordinances under which its limits were extended under the general law. And until such limitations are abolished by legislative action evidenced by language of clear import to that effect, those limitations must be regarded as still in effect.

It follows that if the city has no power to levy a city wide tax for relators' bonds, that there is no enforceable duty on its part to do so in response to the commands of the alternative writ. And to the extent that the alternative writ commands more to be done by the respondents than may be lawfully required of them, it is bad and should be quashed, with leave to relators to amend within ten days.

In all other respects the Court holds that the alternative writ is good and that the return of the respondents thereto presents no bar against the issuance of a peremptory writ to require the doing of the other things commanded to be done. The necessary effect of this holding is that relators are entitled to the issuance of a peremptory writ upon the amendment of the alternative writ to conform to the holding of this opinion, and upon such amendment being made within the time aforesaid, it is ordered that such peremptory writ do issue.

Alternative writ of mandamus quashed with permission to amend in certain particulars. Peremptory writ ordered conditioned upon amendment being made.

BUFORD, C.J. AND WHITFIELD, BROWN AND DAVIS, J.J., concur.

ELLIS, J., concurs in the conclusion.

TERRELL, J., dissents.

Opinion filed November 30, 1932.

PER CURIAM.—On November 7, 1932, by an opinion filed as of that date, this Court ordered the alternative writ of mandamus to be quashed, because the command thereof was too broad. However, relators were permitted to amend their alternative writ to conform to the opinion of this Court and to have a peremptory writ to accord therewith.

An amended alternative writ has been filed pursuant to the leave given to amend. A peremptory writ, to be issued in accordance with the amended alternative writ, is moved. But the respondents, City of St. Petersburg and its officials, object to the issuance of a peremptory writ in accordance with the alternative writ of mandamus to be amended. The ground of that objection is that the writ, as amended, does not conform to the ''zone'' system of taxation for bond debt service, previously sustained by us, in that the amended alternative writ requires the respondents to levy in Zone 4 of the City, the same amount of tax that is required to be levied in Zone 1. The latter feature, it is contended, is neither authorized nor required by law.

We consider the objection interposed as properly presented for our consideration by the respondents' return which shows compliance with every command of the proposed peremptory writ sought to be obtained through the amendment to the alternative writ, except the command respecting the tax levy required to be made in Zone 4.

The question presented by the amended pleadings is whether or not the last territory added to the City of St. Petersburg, known as Zone 4, should be taxed at the same rate as the area within the original corporate limits, or whether said Zone 4 should be relieved of the levy for taxes to pay the bonded indebtedness of the City of St. Petersburg existing at the date of the annexation of Zone 4 to the City.

All the taxable property within the City of St. Peters-

burg, as extended by the several additions to its area, has heretofore been taxed at an equal and uniform rate for all operating expenses of the City, but at different rates for debt service. This plan of taxation was in our previous opinion in this case, approved by us as being in accordance with the applicable laws of the State pertaining to the City of St. Petersburg.

But the suggestion is made that the method by which Zone 4 was in law and in fact annexed to the City, did not preserve for it the benefit of the limitation on taxation for pre-existing bonded debts which we held to be applicable to other annexed areas added to the City under Section 3054 C. G. L., 1921 R. G. S.

The City limits of St. Petersburg were defined by Chapter 6772, Acts of 1913. Thereafter additional territory was from time to time added to said City by ordinances passed, and ratified by election pursuant to Chapter 5464, Laws of Florida, Acts of 1905, carried forward into the general laws of Florida as Section 3054 C. G. L. *supra.*

It is admitted on the record in this proceeding that Zone 1 of the City of St. Petersburg is that part of its present actual territorial limits, defined in Chapter 6772, Acts of 1913, and collectively outlined in the following ordinances:

> "No. 360, passed October 12, 1912;
> No. 466, passed November 30, 1914;
> No. 471, passed December 10, 1914;
> No. 472, passed December 17, 1914;
> No. 480, passed March 9, 1915;
> No. 481, passed March 9, 1915;
> No. 485, passed March 16, 1915;
> No. 486, passed March 16, 1915;

It is also admitted that Zone 2 consists of that certain additional territory annexed under and by virtue of Ordinance No. 88-A, passed December 15, 1920, and Ordinance No. 89-A, passed December 15, 1920, both of which became effective pursuant to Section 3054 C. G. L., and that Zone

3 of the City consists of that certain additional territory now included in the City's territorial area, and which was annexed thereto, by virtue of Ordinance No. 347-A, adopted March 2, 1925, that likewise became effective pursuant to the provisions of said Section 3054 C. G. L., *supra*.

Section 3054 C. G. L., *supra*, as we pointed out in our previous opinion, entered into and became a part of the annexation proceedings had under it, and operated as a limitation upon the taxing authority of the City, so long as it remained an applicable statute. This section of the general statutes expressly enacts that territory annexed to a City by ordinances adopted under it, shall not be liable for, nor taxed to pay, any bond indebtedness of the City existing at the time of the election thereby provided for. Therefore Zones 2 and 3 as hereinbefore mentioned, are within the protection of the guaranty of Section 3054 C. G. L., *supra*, against liability or taxation for pre-existing debts of the City of St. Petersburg, so long as that section of the general law remains applicable and in force.

But Zone 4, so the pleadings now before us show, was added to the City by virtue of Ordinance No. 470-A, which purports to have been adopted pursuant to Section 1918 R. G. S. (3051 C. G. L.). But Section 1918 R. G. S., *supra*, was not applicable to the City of St. Petersburg on the date of the adoption of Ordinance No. 470-A, because the City of St. Petersburg was on July 19, 1926, (the adoption date), a city of over ten thousand inhabitants, and had a special charter from the Legislature. These factors put the City of St. Petersburg within the purview of Section 3054 C. G. L., *supra*, which applies to cities of more than ten thousand population. The fact that St. Petersburg had a special legislative charter took it out of the purview of Section 1918 R. G. S. (3051 C. G. L.). See State ex rel. Davis v. City of Homestead, 100 Fla. 354, 100 Fla. 361, 130 Sou. Rep. 28.

But be that as it may, the annexation ordinance (No. 470-A) was actually adopted by the proper municipal authority and the added territory specified therein became annexed to the City in fact, although the power of annexation by ordinance was defectively exercised in that no election was held as provided and required by Section 3054 C. G. L., *supra*, to which the act of annexation by ordinance would be referable.

However, it appears that notwithstanding the stated irregularity that occurred in reciting that the ordinance of annexation was adopted under an inapplicable statute, and notwithstanding the irregularity that occurred consisting of the failure to have an approval of the annexation ordinance by an election, called and held in accordance with the only applicable statute,* the Legislature with evident knowledge of the irregularities referred to, validated and confirmed the annexation ordinance No. 470-A, by enacting Chapter 13364, Laws of Florida, Special Acts of 1927, which had the effect of validating annexation Ordinance No. 470-A, as an Ordinance of the City. The annexation ordinance having been validated by legislative act, Zone 4 became a part of the City with like force and effect as if the annexation ordinance had been proposed, adopted and ratified in accordance with the applicable statute* permitting the same to be done.

The record shows that the respondent City of St. Petersburg, and its taxing authorities, have ever since the enactment of annexation Ordinance No. 470-A, assumed that such ordinance upon its validation by the Legislature, became subject to the same statutory limitations as are set forth in Section 3054 C. G. L., *supra*, to the effect that territory annexed by ordinance should not be liable for, nor taxed to pay, any bonded indebtedness of the City of St. Petersburg, existing at the time of the annexation.

---

*Section 3054 C. G. L., 1921 R. G. S.

Thus, regardless of the erroneous recital of an inapplicable statutory authority for adopting it, Ordinance No. 470-A has been validated and has been administered by the municipal authorities as having been adopted pursuant to, and subject to the limitations of, the requirements of Section 3054 C. G. L., *supra.* All past tax levies have been made on this practical construction of the ordinance, commencing with the year 1926. The statutes enacted by the Legislature during this period show that the construction and practice of the city officials in the particular just mentioned, have been validated by the Legislature which by the enactment of Chapter 13374, Acts of 1927, recognize and confirm taxes which had been levied in Zone 4 on the same plan that taxes had been levied in Zones 2 and 3. See Middleton v. St. Augustine, 42 Fla. 287, 29 Sou. Rep. 421. Chapter 15512, Acts of 1931, enacted after the present charter was passed, continued this practical construction by again validating existing tax levies which had been made according to the past construction of the laws controlling the city's taxing authority under the zone system.

We therefore hold, in line with what was said by this Court in State ex rel. Comfort v. Leatherman, 99 Fla. 899, 128 Sou. Rep. 21, that this practical long continued construction of the effect of the Zone 4 annexation ordinance having been made, and it having been recognized by subsequent legislative acts enacted in the light of it, such ordinance as so construed becomes the applicable law governing tax levies for debt service in Zone 4 of the City of St. Petersburg under annexation Ordinance No. 470-A, and that the limitations on the authority of the City, and the guaranties to the inhabitants of territories annexed by ordinance, which are applicable to Zones 2 and 3 under Section 3054, C. G. L., supra, apply also to Zone 4 and are binding on the City of St. Petersburg with reference thereto.

So holding, we sustain the respondents' answer, and deny the peremptory writ with reference to the tax levy in Zone 4, with leave to relators to amend the alternative writ to conform to this opinion, whereupon a peremptory writ may issue in accordance with such amended alternative writ, if the amendment be made within ten days.

Peremptory writ denied, with leave to amend alternative writ to conform to Court's opinion with reference to Zone 4.

BUFORD, C.J. AND WHITFIELD AND DAVIS, J.J., concur.

BROWN, J., concurs in the conclusion.

ELLIS, J., dissents.

ELLIS, J., dissenting.—The effect of the majority opinion is that territory lying outside the corporate limits of a city may by proceedings unauthorized by law become included within the city and made to bear its proportion of the city's indebtedness and expenses as that proportion is ascertained by the terms of the ordinance purporting to annex the territory if the people of the annexed territory and the city acquiesce for several years in the City's jurisdiction over the annexed territory and the Legislature by special act defining the boundaries of the city including such territory subsequently to the attempted annexation impliedly or expressly validated the illegal annexation ordinance.

Chapter 13374 Laws of 1927 expressly validated all ordinances theretofore passed, elections held and acts performed or caused to be done by the City extending the limits of the City to the boundaries set forth in Section One of the Act. The evidence submitted in this record is not clear that the boundaries prescribed by Section One of the Act include the territory attempted to be annexed by Ordinance 470-A adopted July 19, 1926. Chapter 14394 Laws 1929 merely attempts to validate and confirm all proceedings in the assessment and levy of taxes levied and imposed by the City on "all property taxable by it" to and

including the year 1928. Chapter 15512 Laws 1931 attempts to accomplish the same end to and including the year 1930.

I regard the attempted validation of the tax levies by the two last named Chapters, as well as the attempted special validation of the illegal ordinance of annexation, as immaterial to the question presented in this case, which is one as to the rate of taxation to be applied to property in the so-called Zone Four within the City.

Chapter 13374 Laws 1927, *supra*, defines the territorial limits of the City of St. Petersburg which, I assume, not having the means for verification at hand, includes the territory which in 1926 was illegally attempted to be annexed by Ordinance 470-A.

Assuming the validity of Chapter 13374, *supra*, defining the territorial limits of the City, all property within such limits became subject to the jurisdiction of the City for municipal or governmental purposes and the description of the territory included became an essential part of the City's charter. Cook v. Portland, 69 Oregon 572, 139 Pac. Rep. 1095; State v. Engel, 171 Wis. 299, 177 N. W. Rep. 33; 43 C. J. 109.

The charter of a municipality is not a contract between the State and the people of the municipal corporation or the corporation itself. The people by enjoying self government in a particular part of the State's territory acquire no vested right therein as against the legislature representing the people of the whole State. The Legislature may at will alter or abolish all municipalities and revert to direct control of local affairs, or it may make a new subdivision or may leave the municipal corporation as it was created but with its powers extended or taken away. See Hunter v. Pittsburg, 207 U. S. 161, 52 L. Ed. 151, 28 Sup. Ct. Rep. 40; Commonwealth v. Moir, 199 Pa. St. 534, 49 Atl.

Rep. 351, 53 L. R. A. 837; Sec. 8 Art. VIII Constitution of Florida; State v. Burr, 79 Fla. 290, 84 South. Rep. 61.

The power includes authority to annex territory, MacGuyer vs. Tampa, 89 Fla. 138, 103 South. Rep. 418; Nabb v. Andreu, 89 Fla. 414, 104 South. Rep. 591.

I therefore conclude that the power of taxation for all municipal purposes should be exercised by the city upon the principles established for State taxation, which is to say that the rate should be uniform and equal for all such purposes.

---

Opinion filed January 2, 1933.

PER CURIAM.—This is another phase of the same mandamus case heretofore considered by us at the present term of this Court. See foregoing opinions filed November 7, 1932, and November 30, 1932, respectively, 144 So. 313, 671. See also Keefe v. Adams, 106 Fla. 733, 143 Sou. Rep. 644, opinion filed September 27, 1932.

The proposition now presented is whether or not the provisions of the City charter of the City of St. Petersburg relating to the methods of protesting against city ordinances and providing for the power of referendum in connection therewith, as well as providing for the power of initiative of city ordinances (See Section 8 of Chapter 15505, Acts of 1931, Special Laws) have any application to ordinancse of the city relating to its budget making powers and duties in connection with the fiscal management of the City.

Our opinion is that the initiative and referendum provisions of the city charter of St. Petersburg were not intended by the Legislature to apply to, and do not apply to, appropriation ordinances provided for, and required by law to be adopted at stated intervals, for the purpose of making effective the statutory budget system of finances prescribed by the city's fundamental law.

This Court has recently had under consideration in an-

other case the nature, purpose and intent of the provisions of the charter of St. Petersburg relating to fiscal management. See Keefe v. Adams, 106 Fla. 733, 143 Sou. Rep. 644. What was said in that case was that the purpose of the charter was to provide a system of budgetary control of city finances and to define the fiscal policy of the city as contemplating an appropriate ordinance and tax levy pursuant thereto not inviolate of the outstanding object of keeping the city on a sound financial basis by appropriately advising the public of the financial condition of the municipal government, and requiring a budget to be adopted by the city officials only after careful study of the city's requirements and resources.

The present charter of the City of St. Petersburg gives the City power to tax only for appropriations made by the City Council after compliance with the provisions setting up a budgetary system of fiscal management. To comply with the true intent of the statute insofar as the budgetary plan is concerned, requires municipal action based on the determination by the city's officials of its available resources and indispensable financial requirements. To hold that the initiative and referendum provisions of the charter are applicable to appropriation ordinances, would materially obstruct, if not entirely defeat, the purpose of having a budget system. And since adherence to the budget system contemplate an inextricable joinder of appropriations for debt service with general appropriations for running the city government, it must be presumed that limitations which would preclude submission to a referendum of the debt service items, because of constitutional inhibitions against impositions of procedural burdens that impair the obligation of contract, evidence a legislative intent that no appropriation ordinances shall be deemed within the purview of the initiative and referendum provisions.

In construing a statute, this Court must glean the legislative intent from the language of the statute, the subject regulated, the purpose to be accomplished, and the means applied for accomplishing the purpose. State v. Rose, 93 Fla. 1018, 114 Sou. Rep. 373.

It is the intent of a valid statute that is the law. And in every case the purpose to be accomplished is to be considered as controlling. Amos v. Conkling, 99 Fla. 206, 126 Sou. Rep. 283. Therefore, even in cases where the context of the statute taken literally, conflicts with a plain legislative intent clearly appearing, the context must yield, otherwise the legislative purpose would be defeated. City of West Palm Beach vs. Amos, 100 Fla. 891, 130 Sou. Rep. 710.

As has been pointed out, we have heretofore construed, and we think rightly so, the Charter of the City of St. Petersburg as contemplating the institution of, and the faithful adherence to, a budgetary system of municipal fiscal management. If the *intent* of Chapter 15505, supra, was to provide for a system of budgetary control for financing the various departments and divisions of the city government, as we held in Keefe vs. Adams, heretofore cited, it is obvious the system of budgetary control set up in the act could not, and would not, be operative for the purpose for which it was designed, if every budget appropriation ordinance, prepared after weeks of study and adjustment of its provisions, could be rendered ineffective by being subject to revision upward or downward, according to the hazard of a municipal election, or so delayed in its taking effect, that the interests of the city would financially suffer, thereby.

It would be unreasonable, indeed, to suppose that the Legislature would require the responsible officials of the city to proceed with care and deliberation to prepare a budget in keeping with the financial needs of the city, and

then subject the resultant financial arrangement evolved therefrom, to a popular referendum election, in which few, if any, of the special factors which have been studied by competent officials in connection with preparing such an arrangement, would be given that thorough investigation and consideration necessary to make any form of budgetary plan operative. A budget system means sound fiscal management of municipal affairs, by requiring all expenditures, through appropriations, to be predicated on a proper understanding and appreciation of all the pertinent facts which may be ascertained with reference to the advisability of making the same.

We are fortified in the view we take of the situation presented in this case, by the fact that the sub-title of Section 8 of the charter of the City of St. Petersburg is denominated: "Direct Legislation by the People." The reference to "legislation" as used in this section of the statute, when considered in connection with the general plan of governmental operation being set up, could not have been intended to embrace those matters of financial management, which, while legislative in their character, are such as are impliedly, if not expressly, required by the Charter to be dealt with by the city's responsible officers on the basis of peculiar and special knowledge possessed by them concerning the possible resources of the city, and the necessities required to be met through the exercise of the delegated power of taxation. See: State ex rel. Wumsch vs. Kingman, 123 Kan. 207, 254 Pac. 397; State ex rel. Blakeslee vs. Clausen, 85 Wash. 260, 148 Pac. 28, Ann. Cases 1916-B 810; S. W. Tel. & Tel. Co. v. City of Dallas, 104 Tex. 114, 134 S. W. 321; Home Telephone & Tel. Co. vs. Los Angeles, 211 U. S. 265, text 280, 29 Sup. Ct. 50, 53 L. Ed. 176; 1 McQuillan on Municipal Corp. 366; 43 C. J. 585.

While the conclusion we have reached on this point, as hereinbefore stated, is sufficient to entitle the relator to a

peremptory writ of mandamus as prayed, the amended answer of the city setting up that the initiative and referendum provisions of the city charter had been invoked by the city's electorate as to the final adoption of the amended appropriation ordinance proposed to be adopted by the city's officials in response to the mandate of the writ of mandamus herein sought, to the contrary notwithstanding, there is yet another good and sufficient legal cause as to why the city's amended answer cannot be sustained as a bar to the relief sought.

In this case the alternative writ was issued against the city and its officials named as respondents to it. The object of the writ is to enforce a personal vested right which the relator has against the municipal corporation respondent. In Aiken vs. E. B. Davis, Inc., 106 Fla. 675, 143 Sou. Rep. 658, it was held by a majority of this court that the rights of a relator in a mandamus suit, claim for which was asserted by an alternative writ granted and served prior to action taken by the respondent city and its officials in an effort to avoid having to comply with its commands, would not be affected by any such subsequent action, and that a peremptory writ would issue in accordance with the alternative writ though the action taken, had it occurred before the issuance of the alternative writ, would have been a good defense. That principle is applicable to this case, where the initiative and referendum action was resorted to after this suit had been filed, and in an apparent effort to obstruct the accomplishment of its end, which was to compel a revision of the city budget to meet the debt requirements necessary to be met to provide for payment of relator's bonds.

We hold, however, as our principal ground for rejecting the amended answers, that the initiative and referendum provisions of the city charter of St. Petersburg, have no application to those matters of fiscal management which

·have been expressly delegated to the city officials, such as the making of appropriations and the levying of necessary taxes to meet the same, since the making of appropriations is an act necessarily requiring intimate knowledge of the city's needs, and a fair understanding of the scope of the city's powers and duties with reference thereto, as prescribed by the Legislature. And this is true, though the matters in question are to be regarded as legislative in character so far as the nature of the power exercised is concerned.

Let the peremptory writ of mandamus issue as prayed.

BUFORD, C.J. AND WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

ELLIS, J., dissents.