STATE, *ex rel.* WOMEN'S BENEFIT ASSOCIATION and PALM BEACH COUNTY, v. PORT OF PALM BEACH DISTRICT, and HARRY R. CORWIN, L. R. BISHOP and WILLIAM A. WEIHE, as and constituting the Board of Commissioners of Port of Palm Beach District, and WILLIAM A. WEIHE, as Secretary of said Board, and J. A. POSTON, C. J. MEERDINK, C. Y. BYRD, DOYLE W. CROCKER and JOHN PRINCE, as and constituting the Board of County Commissioners of Palm Beach County, and JAMES M. OWENS, JR., as Tax Assessor of Palm Beach County, Florida.

164 So. 851.

Opinion Filed November 26, 1935.

*Giles J. Patterson,* for Relators;
*N. Terry Gibson, A. L. Rankin* and *C. D. Blackwell,* for Respondents.

CAMPBELL, Circuit Judge.—Upon the sworn petition of the relators, this Court issued an alternative writ of mandamus, directed to the respondents, commanding them to perform certain alleged duties, with reference to the levy and assessment of taxes on all real and personal taxable property, including homesteads of less than $5,000.00 valuation, in Port of Palm Beach District (formerly Lake Worth Inlet District) for debt service purposes, that is, to provide for the payment of the interest and for the retirement of the principal at maturity of certain bonds of the district, described in the alternative writ of mandamus. The alternative writ directs compliance with its commands, or that cause be shown why the respondents should not comply therewith.

The alternative writ of mandamus, after stating the names of the relators, and the names and official character of the respective respondents, alleges in substance: that the Lake Worth Inlet District was created by the provisions of Chapter 7081, Laws of Florida, Special Acts 1915, and that various Acts of the Legislature amendatory to, or effecting the provisions of said creative Act, are as follows: Chapter 7522, Special Acts 1917, Chapter 8800 Special Acts 1921, Chapter 9993, Special Acts 1923, Chapter 10756, Special Acts 1925, and Chapter 17089, Special Acts 1935; that by the last mentioned Act, the name of the said district was changed from Lake Worth Inlet District to Port of Palm Beach District; that Harry R. Corwin, L. R. Bishop and William A. Weihe are the duly qualified and acting Board of Commissioners of Port of Palm Beach District, and that William A. Weihe is the qualified and acting Secretary of said Board; that A. A. Poston, C. J. Meerdink, C. Y. Byrd, Doyle W. Crocker and John Prince are the duly qualified and acting County Commissioners of Palm

Beach County, and the said James M. Owens, Jr., the duly and qualified Tax Assessor of said County.

It is further alleged, in substance, that Lake Worth Inlet District (now Port of Palm Beach District) being duly authorized by the Constitution and the laws of Florida, particularly Chapter 7081, Laws of Florida, Special Acts 1915, and the subsequent Acts of the Legislature, hereinabove referred to as being amendatory thereto, or otherwise affecting the same, made, executed, delivered and issued certain coupon bonds of said District, one of said issues being dated July 1st, 1916, and numbered 1 to 300, both inclusive, another issue bearing date 1st day of July, 1920, and numbered 301 to 450, both inclusive, another issue dated July 1st, 1922, and numbered 451 to 725, both inclusive, another issue bearing date July 1, 1924, and numbered 726 to 1125, both inclusive, and another issue bearing date January 1st, 1926, for 3250 bonds. Each of the bonds in the respective issues being for the principal sum of $1,000.00, and bearing interest, some at 5½ per cent. and others at 6 per cent. per annum, payable semi-annually. To the original petition there is attached, as is alleged, one copy of a bond with interest coupons, of each of the respective issues.

Each of the relators is alleged to be the owner and holder of certain of the bonds with coupons attached, so issued by said Lake Worth Inlet District, giving the number of each of the bonds so owned, and of which issue it is a part. It is further alleged that the aggregate amount of principal and interest of all issues now past due and payable, and in default, to the relator, Palm Beach Company, is the sum of $49,227.50, and the aggregate amount of principal and interest to mature on the bonds of all said issues in the ensuing fiscal year is the sum of $76,055.00. As to the

bonds held by the relator, Woman's Benefit Association, a corporation, it is alleged that interest in the sum of $2,700.00 will become due and payable in the ensuing fiscal year.

The allegations of paragraph 14 of the Alternative Writ of Mandamus are as follows:

"That the Lake Worth Inlet District has an outstanding bonded indebtedness of approximately $3,650,000.00, of which said amount of outstanding bonds, $93,000.00 are past due. In addition to said past due bonds there is matured interest outstanding and unpaid in the approximate amount of $196,000.00, and said Lake Worth Inlet District has been in default in the payment of principal on its outstanding bonds since January 1, 1933, and has been in default in the payment of interest on its bonded indebtedness since January 1, 1933.

"That the assessed valuation of all taxable property located in the Port of Palm Beach District, according to the assessment roll for the year 1935, is approximately $18,350,000.00, and that of such property, property of the assessed valuation of approximately $2,965,000.00 has been sold to the State of Florida for taxes for the year 1933 or prior years; that the remaining properties, having an aggregate assessed value of $12,385,000.00, include homesteads of the value of $5,000.00 or less each, of an aggregate value of $1,215,000.00."

Paragraph 16 of the Alternative Writ of Mandamus alleges as follows:

"That Article X, Section 1, of the Constitution of the State of Florida provides that homestead property shall not be 'exempt from sale for taxes or assessments,' and said article was in force when the bonds described in this writ were issued. That on the 6th day of November, A. D.

1934, the electorate of the State of Florida voted to amend the Constitution of the State of Florida by adding Section 7 to Article X, which provides:

" 'There shall be exempt from all taxation other than special assessments for benefits to every head of a family who is a citizen of and resides in the State of Florida, the homestead as defined in Article X of the Constitution of the State of Florida, up to the valuation of $5,000.00; provided, however, that the title to said homestead may be vested in such head of a family or in his lawful wife, residing upon such homestead or in both.'

"That the major portion of the homestead property, including homesteads valued at less than $5,000.00, located in the Port of Palm Beach District, to-wit, all except homesteads of the aggregate value of $225,000.00, has currently paid taxes, and such property has *not* been delinquent in the payment of *ad valorem* taxes; but, notwithstanding the collection of the said taxes against said homestead property, the said district has defaulted in the payment of its bonded debt, as herein described, and the omission of said homesteads of less than $5,000.00 valuation from the assessment roll, and the exemption of the same from the payment of *ad valorem* taxes for the payment of interest and principal on relator's bonds, will reduce the amount of tax collections and thus diminish the security and reduce the value of bonds and coupons held by your relators, and impair the obligation of relators' contracts, contrary to Section 17 of the Bill of Rights of the State of Florida, and Article I, Section 10, of the Constitution of the United States."

It is then, in substance, further alleged that it is the duty of the respondents, as and constituting the Board of Commissioners of Port of Palm Beach District, by resolution to levy upon *all* the real and personal taxable prop-

erty in said district, a tax sufficient to pay the interest and
to create a sinking fund for the payment at maturity of the
bonds held by the relators; that it is the duty of such Board
to certify such resolution through its Chairman and Secre-
tary, affixing the seal of the Board, and delivering same to
the Board of County Commissioners of Palm Beach County,
whose duty it is to then assess the taxes levied upon *all*
taxable real and personal property in said district at the
rate of taxation adopted by the Board. That it is the duty
also of the respondent, Tax Assessor of Palm Beach
County, to prepare an assessment roll in accordance with
the laws of the State of Florida, which shall include in the
description of properties to be assessed, *all* property which
was taxable by said Lake Worth Inlet District, and the
Commissioners thereof, at the time the bonds of relators
were issued, and including therein all homesteads of the
valuation of the same, and to carry out, extend and assess
the taxes so fixed and levied, *against and upon* all such
properties.

It is further alleged that the Comptroller of the State of
Florida has instructed all County Tax Assessors to omit
homestead property of a valuation of less than $5,000.00
from the assessment rolls of their counties, and relators
are *informed* and *believe* and *upon information and belief
allege* that the Tax Assessor of Palm Beach County is omit-
ting homestead property less than $5,000.00 in value located
in Port of Palm Beach District, from the assessment rolls
for the fiscal year 1935-1936, on which taxes will be ex-
tended, whereby the obligation of the contract of the dis-
trict bonds held by relators will be impaired.

The commands of the Alternative Writ of Mandamus re-
quire the respondent Port of Palm Beach District and the
Board of Commissioners of such District, to pass and certify

the necessary resolution for the levy of the taxes required in the Port of Palm Beach District upon all taxable real and personal property in the District, and to certify said resolution through its Chairman and Secretary with seal affixed, to the Board of County Commissioners of Palm Beach County, with instructions to order the Tax Assessor to assess and extend on the tax rolls prepared by him *all* the taxable property, real and personal, in said district, including homesteads regardless of the value thereof.

To the Alternative Writ of Mandamus the respondents, members of the Board of County Commissioners of Palm Beach County, and the Tax Assessor of said County, have demurred; setting up several grounds of demurrer. These grounds of demurrer may be said to raise one major question, which is, whether or not, the allegations of fact set forth in the Alternative Writ of Mandamus are such as will require the respondents as taxing officers for Port of Palm Beach District, to levy and assess an *ad valorem* tax on homesteads of less than $5,000.00 in value, located in the boundaries of the district, to provide for paying the interest on, and for the payment of the principal at maturity of outstanding coupon bonds of the district, issued prior to the adoption of Section 7, Article X, of the Constitution of Florida, exempting homesteads of such value from all taxation. Or to put it in another way, we may say the question raised by this demurrer, is whether or not, under the provisions of Section 7, Article X, of the Constitution of Florida, homesteads of the value of less than $5,000.00 located in a taxing district, are subject to the levy and assessment of an *ad valorem* tax provided by statute to raise revenue for the payment of principal and interest on bonds issued by such taxing district prior to the adoption of such constitutional provision?

As we have repeatedly held, a demurrer to, or a motion to quash, an alternative writ of mandamus admits as true all allegations of fact properly pleaded. See State, *ex rel.* Sherrill, v. Milam, 113 Fla. 491, 153 So. 100; State v. Jacksonville Terminal Co., 71 Fla. 295, 71 So. 474; State v. East Coast Railroad Co., 71 Fla. 433, 71 So. 543; Mixon v. First National Bank, 102 Fla. 468, 136 So. 258.

In our consideration of the demurrer to the alternative writ in the instant case, we therefore, for the purpose of demurrer, look upon all the allegations of the alternative writ of mandamus as true. As we view the grounds of demurrer, there is no question raised as to any defect in the alternative writ of mandamus as a pleading, but they question the sufficiency of the facts alleged, to warrant the relief asked for.

It appears from the allegations of the alternative writ of mandamus that under the provisions of Chapter 7081, Laws of Florida, Special Acts of 1915, and subsequent Acts of the Legislature, amendatory thereof, or further affecting such Act, coupon bonds of Lake Worth Inlet District were issued at different times and that the relators are owners and holders of certain bonds of one or more of these issues, and that the interest and principal of some of the bonds held by one of the relators are delinquent and that large sums of interest on the bonds held by the other are now delinquent or will be delinquent during the ensuing year.

Under the provisions of Chapter 7081, Laws of Florida, Special Acts of 1915, there was created and incorporated a Special Taxing District in Palm Beach County, State of Florida, to be known as Lake Worth Inlet District, embracing certain territory particularly described in the Act and its title. Provision was made in the Act for the government and administration of the district, defining its

powers and purposes, as also, the powers of the Board of Commissioners provided for in the Act. Under the provisions of the Act the Board of Commissioners were empowered to *levy* and *collect* taxes upon *all the taxable property* in said district for the purposes authorized in the Act. The Board of Commissioners was by the Act authorized to *borrow money and to issue and sell bonds* to procure moneys to carry out the provisions of the Act relative to constructing an inlet in the district, connecting the waters of Lake Worth with the Atlantic Ocean.

Section 16 of the Act provides as follows:

"This Act *shall,* without reference to any other Act of the Legislature of Florida, be full authority for the *issuance and the sale of bonds in this Act, authorized,* which bonds shall have all the qualities' of negotiable paper under the law merchant, and shall not be invalid from any irregularity or defect in the proceedings for the issue and sale thereof, and shall be incontestable in the hands of *bona fide* purchasers for value. No proceedings in respect to the issuance of any such bonds shall be necessary except such as is required by this Act. The provisions of this *Act shall constitute an irrepealable contract between said Board and the holders of such bonds and coupons thereof issued pursuant to the provisions hereof. Any holder of said bonds or coupons may either at law or in equity, by suit action or mandamus, enforce and compel the performance of any of the duties required by the Act of any of the officers or persons mentioned herein in relation to the said bonds, or the collection, enforcement and application of the taxes for the payment thereof.*" (Italics supplied.)

Section 17 of the Act provides:

*"It shall be the duty of said Board, out of the proceeds of the taxes levied and imposed by this Act,* and out of any

other moneys in the possession of said Board, which moneys, so far as necessary, are hereby set apart and appropriated for the purpose, to apply said moneys and pay interest on said bonds as the same fall due, and at the maturity of said bonds out of said moneys to pay the principal thereof; *and there shall be and is* hereby created a sinking fund for the payment of the principal of said bonds, and said Board shall set apart and pay into the sinking fund annually, *out of the taxes levied and imposed under this Act,* and any other revenues or funds of said District, at least two per cent. of the amount of bonds outstanding, etc."

By the enactment of Chapter 8800, Laws of Florida, Special Acts of 1921, the Legislature, by amending Section 8 of Chapter 7081, as amended by Section 3, Chapter 7522, Special Acts of 1917, authorized an increased levy of taxes to provide for the payment of bonds of the district and interest thereon. Section 8, of Chapter 7081, as thus amended, provides in part as follows:

"That the said Board is hereby *authorized and empowered to levy upon all of the real and personal taxable property* of the said district, a special tax, *sufficient* in amount *to pay the interest becoming due, and payable annually upon all bonds issued or to be issued or money borrowed or to be borrowed by the district, and also to create a sinking fund for the payment of principal thereof at maturity,* etc." (Italics ours.)

When provisions for the creating and the financing of Lake Worth Inlet District and the scheme and method of taxation outlined for raising the funds to construct the inlet, to pay back borrowed money and the principal and interest on the authorized coupon books of the District were enacted, and when each series of the alleged bonds of the District were issued, there was, under the Constitution of Florida,

a clear and well defined meaning of the term "taxable real or personal property." Especially did the Constitution define and limit the exemption of property from taxation to such as might be exempted by law "for municipal, education, literary, scientific, religious, or charitable purposes," see Section 1, Article IX, Constitution of Florida. Article X of the Constitution of Florida, the Article which governed at that time the right of the State to homestead exemption from forced sale for debt, provided in Section 1, as follows:

"But no property shall be exempt from sale for *taxes or assessments.*" (Italics ours.)

When the bonds of Lake Worth Inlet District now held by the relators were issued, the Special Laws hereinabove referred to as providing for the levy of an *ad valorem* tax on all taxable real and personal property in the district, for the payment of the interest on the bonds, the creation of a sinking fund from the proceeds of the tax levy to pay the principal of the bonds at maturity, and all the remedies then existing for the levy, assessment and collection of such tax, were included in the obligation of the contract. See Von Hoffman v. Quincy, 4 Wall. 535, 18 L. Ed. 403; Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; Mobile v. Watson, 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620; State v. Lehman, 100 Fla. 1313, 131 So. 533; Meyer v. Brown, 65 Cal. 583, 26 Pac. 281; Rorick v. Bd. Everglade Drainage Comm'ers, 57 Fed. (2nd) 1048; State v. Milam, 113 Fla. 491, 153 So. 100.

We would observe also that the obligation of the bond contracts were made while the constitutional restriction of laws permitting exemptions of property from taxation to those classes defined in Section 1, Article IX, of the Constitution of Florida, was operative.

Therefore, when the bonds of Lake Worth Inlet District now owned and held by the relators were issued, it became and was a part of the obligation of the contract of the bonds that a tax should be levied and assessed on all real and personal taxable property in the district sufficient to pay the interest on such bonds as same became due and also to create a sinking fund equivalent to two per cent of the face of the outstanding bonds of the district every year. It also became a part of the obligation of the bonds under the law, that this provision regarding the levy of the tax on all personal and real taxable property in the district for such debt service on bonds, was an *irrepealable* contract.

What effect then does the adoption of Section 7, Article X, of the Constitution of Florida have upon the above described obligations of the contracts of the bonds of Lake Worth Inlet District described in the alternative writ, that are admittedly for the purposes of this demurrer, valid and owned and held by the respective relator? That the source of the revenue by which the interest on, and the principal of, bonds of a taxing unit are to be paid is an essential element of the obligation of the bond contract, cannot be doubted. Does the elimination or the abandonment of a substantial portion of the source of such revenue impair the obligation of the contract? We think it does. In the case of State, *ex rel.* Sherrill, v. Milam, *et al.,* 113 Fla. 491, 155 So. 100, we said:

"Legislation which lessens the efficacy of the means provided by law for the enforcement of contracts impairs the obligation thereof in the constitutional sense."

In the case of Sherrill v. Milam, *et al., supra,* we quoted from the opinion of Mr. Justice SWAYNE, written for the Court in the case, State, *ex rel.* Hoffman, v. Quincy, 4 Wall. 535, 18 L. Ed., pages 408, 409 (text) the following:

"It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to, or incorporated in, its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement. * * * *Nothing can be more material to the obligation than the means of enforcement.* Without the remedy the contract may, indeed, in the sense of the law be said not to exist, and its obligation be said to fall within the class of those moral and social duties which depend for their fulfillment wholly upon the will of the individual. *The ideas of validity and remedy are inseparable, and both are parts of the obligation* which is guaranteed by the Constitution against invasion. The obligation of the contract is that which binds the parties to perform their agreement." (Italics supplied.)

"The remedy subsisting when a contract is made is a part of its obligation, and any subsequent law of the State which so affects it as substantially to impair and lessen the value of the contract is forbidden by the Constitution and void." Edward v. Kearzey, 24 L. Ed. 793, 96 U. S. 595.

To "impair" has been defined as meaning to make worse, to diminish in quantity, value, excellency or strength; to lessen in power, to weaken. Whatever legislation lessens the efficacy of the means of enforcement of the obligation is an impairment. Also if it tends to *postpone* or *retard* the enforcement of the contract, it is an impairment. See State of Louisiana, *ex rel.* Morris, v. City of New Orleans, 26 'L. Ed. 132, 102 U. S. 203. If the provisions of Section 7, Article X, of the Constitution of Florida, are to be considered as being operative in eliminating from taxation for debt service on the bonds issued by Lake Worth Inlet District, homesteads located in the district of less valuation

than $5,000.00, then there will be a lessening of the efficacy of the means of the enforcement of the obligations of the bond contract. These bonds were issued with the clear legal requirement, by a valid enactment of the Legislature, that *all* the then taxable property in the district should be taxed to provide for the payment of both interest on, and principal of, the bonds.

Under the provisions of Section 10, Article I, of the Constitution of the United States, no State can pass a valid law or enactment impairing the obligation of contracts.

It has been repeatedly held, in fact there is practical unanimity in the authorities, that subsequent legislation cannot annul nor diminish, retard or lessen the efficacy of prior laws entering into or forming a part of the contracts with bondholders. See Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; United States, *ex rel.* Wolfe, v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; State of Louisiana, *ex rel.* Southern Bank, v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090; Mobile v. Watson, 115 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620; Ralls County Court v. U. S., *ex rel.* Douglas, 105 U. S. 733, 26 L. Ed. 1220; State, *ex rel.* Gillespie, *et al.,* v. Carlton, *et al.,* 103 Fla. 810, 138 So. 612, 619; (text); Trustees of Internal Improvement Fund v. Bailey, 10 Fla. 112, text 131, 81 Am. Dec. 194; Rorick v. Board of Commissioners of Everglades Drainage District (D. C.) 57 Fed. (2d) 1048; Humphreys v. State, 108 Fla. 92, 145 So. 858; State, *ex rel.* St. Petersburg, 106 Fla. 742, 144 So. 313; State v. Milam, *et al.,* 113 Fla. 491, 153 So. 100; Gray v. Moss, 115 Fla. 701, 156 So. 262; Gray v. Winthrop, 115 Fla. 721, 156 So. 270; W. B. Worthen Company, as Trustee, v. Thomas, 292 U. S. 426, 78 L. Ed. 1344, 54 Sup. Ct. 816; Folks, *et al.,* v. County of Marion (Fla.) decided this term of the Court, 163 So. 298.

Section 7, Article X, of the Constitution of Florida, was adopted and became a part of Florida's organic law by the vote of the electorate on November 6, 1934. By the adoption of this amendment to the Constitution the people said that after such adoption, homesteads in the State of Florida of the value of $5,000.00 or less shall be exempt from all taxation except for special assessments for benefits. The voice of the people is a great power. However, as great as this power may be, it cannot even in promulgating a basic law for the State, disturb vested contract rights, contrary to the provisions of the Constitution of the United States.

In the case of Gray, Secretary of State, v. Moss, 115 Fla. 701, 156 So. 262, we said, speaking through Mr. Justice WHITFIELD:

"The prohibition of laws impairing contractual obligations by the Federal Constitution applies to the Constitution as well as laws, of each State."

Again in the same case we said through the same member of the Court:

"State Constitutions and amendments thereto are subject to applicable prohibitions and limitations of Federal Constitution," citing Const. U. S. Art. 6, pars. 2, 3; Const. Fla. Declaration of Rights, Par. 2; Art. 6, Par. 3; Art. 16, Par. 2.

"The prohibition in the Constitution of the United States against the passage of laws impairing the obligation of contracts applies to the *Constitution as well as the laws* of each State."

A State can no more impair the obligation of an antecedent contract by adopting a Constitution or amending its Constitution than by passing or amending a statute. Osbor v. Nicholson, *et al.,* 13 Wall. 654-663, 20 L. Ed. 689; Gunn v. Barry, 15 Wall. 610-624, 21 L. Ed. 212; New

Orleans Gas Light Co. v. Louisiana Light and Heat Producing and Manufacturing Co. (U. S.) 115 U. S. 650, 29 L. Ed. 516; State of Louisiana, *ex rel.* Josiah Fisk, v. Police Jury of Jefferson, etc. (U. S.) 116 U. S. 131, 29 L. Ed. 587; City of Shreveport v. Cole, *et al.* (U. S.) 32 L. Ed. 589. See also Edwards v. Kearzey (U. S.) 24 L. Ed. 793, 96 U. S. 595, where the Supreme Court of the United States says:

"The provisions in the Constitution of a State which exempts from sale under execution every homestead not exceeding the value of $1,000.00 is invalid as regards contracts made before the adoption of the Constitution."

In the case of Gray, Secretary of State, v. Moss, *supra,* Mr. Justice WHITFIELD said in his very able opinion that the words "exempt from all taxation" as they then appeared in the then proposed Section 7 of Article X of the Constitution of Florida, exempting certain homesteads from taxation, should be held to mean "exempted from all taxation when not restrained by the Federal Constitution." To the same effect was the holding of this Court in the case of Gray, Secretary of State, v. Winthrop, *supra.* We think and so hold, that the provision of Section 7, Article X, exempting from all taxation homesteads of the value less than $5,000.00 is inoperative and void insofar as it might prohibit the levy, assessment and collection of taxes on such homesteads for the payment of interest on, and providing for the retirement of the principal of, bonds issued by Lake Worth Inlet District by authority of law, prior to the adoption of such exemption provision in the Constitution, unless and until some other adequate fund shall be legally substituted to take the place of the fund which would be lost by the exemption. To hold otherwise would run athwart not only Article I, Section 10, of the Constitution

of the United States, but also a long line of decisions of the United States Supreme Court, of our own Court and of the highest courts of many other jurisdictions.

We said in Gray v. Winthrop, *supra:*

"Applicable provisions of Federal Constitution within their proper sphere of operation *are dominant authority* in interpretation and enforcement of State constitutional provisions which may be affected by Federal organic provisions." (Italics supplied.)

The allegations of the alternative writ of mandamus in our opinion show that there is a large outstanding bonded indebtedness of the Port of Palm Beach District, formerly Lake Worth Inlet District, this indebtedness being evidenced by several legal issues of bonds by the district.

It is further shown by the allegations of the alternative writ of mandamus that all these bonds were issued prior to the adoption of the constitutional amendment providing for the exemption of homesteads from all taxation (Section 7, Article X) and that the relators are the owners of certain of the bonds of the several issues. It further appears that interest and principal on these bonds have been delinquent since January 1, 1933, and that the assessor is in compliance with the directions of the Comptroller planning to omit from the tax rolls all homesteads of the value of less than $5,000.00 in the district. And it further appears that the omitting to assess such homestead property will reduce the tax assessment roll over $2,000,000.00 or more than ten per cent. of what it would be with the homesteads assessed. The enactment of the Legislature referred to and quoted from in the allegations of the alternative writ of mandamus require that there shall be levied and assessed and collected on *all* the taxable property in the district for debt service on the bonds described, and that all these provisions of the

law regarding such levy, assessment, collection and use of the moneys realized from taxes are a part of the obligations of the bond contract. We are of the opinion that the allegations of the alternative writ of mandamus are sufficient to authorize the commands of such writ. We therefore hold, and it is the judgment of the Court, that the demurrer to the alternative writ of mandamus be overruled.

WHITFIELD, C. J., and TERRELL, BROWN and DAVIS, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—I have carefully considered the authorities cited in the majority opinion in this case, but am unable to reach the conclusion that the application of Section 7 of Article X of the Constitution as amended by ratification at the election of November 6, 1934, to the levy of taxes for the payment of debt service *per se* violates the provision of the Federal Constitution prohibiting any State to enact laws which impair the obligations of contracts. Article I, Section 10.

It appears to me that the obligation of the contract is not impaired by the exempting of the homestead property described in amended Section 7 of Article X of the State Constitution, except in cases where it can be shown that the application of the exemption amendment will deprive the contract holder of the method or means of enforcing his contract which was, before the adoption of the constituttional amendment, available to him.

Stated another way, it appears to me that if there remains in a taxing district sufficient taxable property upon which lawful tax may be levied to meet the obligation of the contract, then the obligation is not impaired.

If the enactment of a law which makes less valuable an existing contract is *per se* invalid, then it must follow that

wherever a legislative Act has authorized the issuing of bonds by any taxing unit in a stated limited amount and that taxing unit has issued such bonds, any legislative Act passed thereafter authorizing additional bonds to be issued by such taxing unit would be invalid, because it necessarily follows that the issuing of additional bonds will place a larger tax burden on the taxing district and thereby depreciate the value of the original bond issue.

The only difference between the application of the provision of amended Section 7 of Article X and the authorization of additional bonds after a limited bond issue has been authorized is that under the provisions of amended Section 7 of Article X the tax levy must be increased on that part of the property remaining taxable in the district, while under such legislative enactments the tax burden must be increased on all the property in the district.

The record in this case does not show that the application of amended Section 7 of Article X of the Constitution will deprive the relators of any means or method heretofore enjoyed by the relators for the enforcement of the contract.

The record shows that the contract has already been breached at a time when all property was available for taxation. Therefore, the breach cannot be charged to the application of the homestead exemption.

When the amendment was submitted to the electors, most of whom we will take judicial knowledge were taxpayers, it may be well assumed that the great majority of such taxpayers and electors voted to place the necessary additional tax on non-exempt property, to supply whatever should be necessary to make up for the loss occasioned by the authorized home exemption.

The reports of the State Auditor on file in the office of the Governor, of which we may take judicial cognizance,

disclose that the total outstanding bonded indebtedness as of November 6, 1934, of counties, special road districts, special school districts, drainage and other special districts and municipalities of the State amounts to $486,478,000.00 and that the total defaulted interest on such bonds amounts to $40,301,664.00, or a total of $526,728,142.00.

The report also shows that "the aggregate amount which homestead exempt property will be taxed annually to meet this proportion of debt service on obligations issued prior to November 6, 1934, is estimated to be only $8,772,778.12." This based on a valuation for county and district purposes of $142,171,915.00 and on a valuation for municipal purposes $208,497,052.00. The total assessed valuation of all property in the State for State and county purposes for the year 1934 as shown by the reports in the office of the State Comptroller was $499,372,925.00.

From these figures it will be seen that the property sought to be exempt under amended Section 7 of Article X of the Constitution represents only a small fraction of the total taxable property in the State, especially when we bear in mind the fact that in the above stated total State valuation is not included valuations for special taxing districts or municipalities.

I think the view herein expressed is supported by opinion and judgment in the case of Arkansas Southern Ry. Co., et al., v. La. and Ark. Ry. Co., 218 U. S. 431, 54 L. Ed 1097, in which the United States Supreme Court, speaking through Mr. Justice HOLMES, said:

"No doubt a State might limit its control over the power of a municipal body to tax by authorizing it to make contracts on the faith of its existing powers (Wolf v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; Louisiana, ex rel. Hubert, v. New Orleans, 215 U. S. 170, 54 L. Ed. 144, 30

Sup. Ct. Rep. 40), although, unless it did limit itself with a certain distinctness of implication, a subordinate body would contract subject, not paramount to the power of the State (Manigault v. Springs, 199 U. S. 473, 480, 50 L. Ed. 274, 278, 26 Sup. Ct. Rep. 127; Knoxville Water Co. v. Knoxville, 189 U. S. 434, 438, 47 L. Ed. 887, 891, 23 Sup. Ct. Rep. 531). But there is no such limitation by the State and no contract by the parish that implies it. An authority given by the State to promise and levy a tax in 'future years on the taxable property in the parish does not purport to limit the power of the State to say what property shall be taxable when the time comes—at least, by general regulations not aimed at aiding an evasion of the promise it has allowed. A vote by a parish to pay 5 mills on all the taxable property within its boundaries refers on its face to a determination by the sovereign as to what that property shall be. See Arkansas Southern R. Co. v. Wilson, 118 La. 395, 401, 42 So. 976. The notion that the statute and the vote, separately or together, precluded the State from erecting a jail that should be free from such claims, is untenable on its face. The same reasoning allows the State to go further, as it has done. We agree with the Supreme Court that it did not transgress the Constitution of the United States."

I think that all the contracts of bonded indebtedness existing on and prior to November 6, 1934, were entered into subject to the power of the State to amend its Constitution so as to make reasonable exemptions of property from the burden of taxation whether for future operating expenses or for the payment of debt service to discharge obligations theretofore existing and that by the adoption of amended Section 7 of Article X of the Constitution only this much has been accomplished and that the bondholders involved

in this case have been left with an adequate remedy to require the levy of a sufficient tax on non-exempt property to meet the obligation of their contracts.